UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

DONALD SADLER, ET AL                    CIVIL ACTION NO. 09-cv-1254

VERSUS                                   JUDGE JAMES

INTERNATIONAL PAPER CO.                  MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Plaintiffs are more than 70 adults and minors who assert claims for damages allegedly caused by hazardous substances that were discharged by a paper mill operated in Bastrop by International Paper Company ("IP"). Plaintiffs' claims are set forth in their First Amended Complaint ("FAC"). IP has attacked that pleading with a Motion to Dismiss (Doc. 11) pursuant to Fed. R. Civ. Proc. 12(b)(6). For the reasons that follow, it is recommended that the motion be granted in part and denied in part.

**The Allegations**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). Accordingly, the facts set forth in the FAC will be summarized herein, with the obvious understanding that IP contests the facts alleged.

The suit is centered around IP's operation of a paper manufacturing facility in Bastrop (the "Facility"), from which Plaintiffs allege tons of hazardous substances, pollutants,

contaminates, and other toxic materials are and have for years been continuously released into the environment, 24 hours a day. FAC, ¶ 1. Plaintiffs list several such hazardous substances, with reference to federal regulations regarding them. The substances include dioxins, which Plaintiffs allege are unreasonably dangerous and have been known for more than 40 years to cause significant health problems in humans and animals. Plaintiffs list other substances such as furans and polycyclic aromatic hydrocarbons, all of which are alleged to be capable of causing significant health problems, and some of which are carcinogens. The hazardous substances released by the Facility are accompanied and evidenced by the deposits of particulate matter and noxious odors. The Facility has been rated by one organization as among the "dirtiest facilities in the U.S." because it is in the top 10 percent in total environmental releases, air releases of recognized carcinogens, and non-cancer risk from both air and water releases. FAC, ¶¶ 2-10.

Plaintiffs describe themselves as present or past residents of the City of Bastrop and its surrounding areas. They have resided in the community around the Facility and have either owned or leased property in that community. Plaintiffs "are all persons who have losses occasioned by International Paper's actions, including, without limitation, personal injuries, medical problems, fear of future medical problems, and property damage, all of which were proximately caused by the release of the Hazardous Substances, Particulate Matter, and Noxious Odors into the environment from the Facility." Plaintiffs seek damages and injunctive relief for their injuries. ¶¶ 12-15.

IP has known for several years that it was releasing hazardous substances from the Facility, but it intentionally failed to disclose this information to Plaintiffs. As a result, Plaintiffs have been continually and unknowingly exposed to the hazardous substances and, as a direct consequence of the exposure, their health has been impaired and their long-term health placed at risk. Property owned by Plaintiffs has been continually and unknowingly contaminated by the hazardous substances, causing damage to and diminution of the value of the property, as well as the loss of the expected use and enjoyment of the property. ¶ 16.

The actions of IP and its agents violated several laws intended to protect Plaintiffs from the effects of hazardous substances. Plaintiffs list several such laws, including CERCLA, the Superfund Act, the Clean Air Act, the Clean Water Act, the Solid Waste Disposal Act, and several Louisiana environmental quality statutes. ¶ 21. IP knew or should have known that the Facility was releasing hazardous substances at a level that was unlawful and that could cause injury to persons and property. Its violations of the several laws and regulations constituted violations of duties imposed by law and intended to prevent harm to Plaintiffs and other persons similarly situated. ¶¶ 22-24.

IP has knowingly under-reported the Facility's releases of hazardous substances into the environment. The substances released from the Facility are known to cause, promote, and accelerate cancer, cause birth defects, and cause other serious, disabling, and life-threatening diseases and health conditions in humans. IP knew or should have known that the release of the substances from the Facility could and did have such health impacts on

Plaintiffs and other humans. Plaintiffs' exposure to the substances directly and proximately caused them to suffer damages, including disabling and life-threatening diseases and health conditions, emotional injuries, lost wages, medical expenses, and loss of enjoyment of life. ¶¶ 25-29 and 32.

IP negligently or knowingly suppressed several facts regarding the hazardous substances, all of which Plaintiffs allege IP was required to disclose. Those facts include the nature and extent of the release of hazardous substances from the Facility, that persons should not be exposed to the substances, that exposure could occur by breathing, ingesting, or coming into contact with the substances, that exposure could cause, promote, and accelerate the health problems listed above, and that the substances could cause diminution in value of property. ¶ 35. Plaintiffs also allege that IP deposited waste on their properties, an allegation that will be discussed below in more detail.

**Rule 12(b)(6) Standard**

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). That standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). A pleading that offers labels and conclusions or a formulated recitation of the elements of a

cause of action will not do, nor will a complaint suffice if it tenders naked assertions devoid of further factual enhancement. Iqbal, 129 S.Ct. at 1949.

To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1973. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. Asking for plausible grounds to infer an actionable claim does not impose a probability requirement at the pleading stage. It simply calls for enough facts in the complaint "to raise a reasonable expectation that discovery will reveal evidence" that satisfies the legal elements of the claim. The complaint may proceed even if it strikes a judge that actual proof of those facts is improbable and that recovery is remote and unlikely. Twombly, 127 S.Ct. at 1965.

**Trespass**

The FAC sets forth eight counts, the first of which is for trespass. In Louisiana, a trespass is "an unlawful physical invasion" upon the property of another. Boudreaux v. Jefferson Island Storage & Hub, LLC, 255 F.3d 271, 273 (5th Cir. 2001). Plaintiffs allege that IP has used their property "as if that property belonged to" IP and was part of the Facility. The manner in which IP did this was "by dumping its waste, debris, and ash on and near Plaintiffs' properties, by its continuing use of those piles, and by its failure to remove the existing hundreds of thousands of tons of waste, debris, and ash dumped on or near

Plaintiffs' properties." IP economically benefits by using Plaintiffs' properties "as its own effective supplementary dumping grounds." FAC, ¶¶ 33-34. Plaintiffs allege that the discharge of hazardous toxic chemicals and waste into the ground, water, and atmosphere has "resulted in an actual physical invasion onto and into Plaintiffs' properties" that is continuing. ¶ 39. The unauthorized presence of the substances has damaged Plaintiffs' properties. ¶¶ 40-44.

IP faults this count for not identifying which of the several potential claimants actually sustained property damage, what type of property was impacted, when the property was owned, where the property was located, how the property was impacted, when the invasion of property occurred, what damage was incurred, and which of the hundreds of possible compounds listed in the FAC were involved in the trespass. Those questions are the proper subject of discovery, but their lack of answer on the face of the complaint does not permit dismissal pursuant to Rule 12(b)(6).

IP does not dispute that the dumping of hazardous substances on another's property could support a trespass claim under Louisiana law; it argues that the FAC lacks adequate detail to plead such a claim. The allegations reviewed above are more than adequate to satisfy the short and plain statement requirement of Rule 8 and permit the claim to survive pleadings review. Plaintiffs did not merely make a boilerplate recitation of the legal elements of trespass. They outlined facts that would satisfy those elements if proved. It was not necessary for Plaintiffs to provide the extraordinary level of detail IP demands.

Among IP's complaints about the FAC is that it fails to allege who among the several Plaintiffs sustained property damage. Plaintiffs respond that the "FAC alleges that *all* Plaintiffs have sustained damage to real property they either owned or leased." IP urged in its reply that this is a mischaracterization of the FAC because it merely used the generic term "Plaintiffs" in connection with the claim. IP argues that it is not reasonable to infer that this means all 70-plus plaintiffs, including 19 minors. It is a reasonable, although not necessary, construction of the term Plaintiffs to include all of the plaintiffs. It may be unlikely that all Plaintiffs actually sustained damage to real property that they owned, but the court must accept these allegations as true at this point.[1] The trespass claim is alleged adequately to pass Rule 12(b)(6) review.

**Private Nuisance**

Plaintiffs assert a count labeled Private Nuisance based on the alleged release by IP of hazardous substances, pollutants, and other toxic materials onto Plaintiffs' properties and persons, causing them personal injuries, land damage, and loss of use and enjoyment of their property. Plaintiffs seek injunctive relief to prevent further such action, and they ask for damages for loss of use of property, remediation, and diminution in value. FAC, ¶¶ 51-55.

---

[1] The court notes that answers to questionnaires that are discussed in other motion practice reveal that not all Plaintiffs actually claim damage to real property. The Plaintiffs who do make such a claim have alleged it adequately in the FAC, but counsel for Plaintiffs are directed to be more specific in future pleadings to avoid such ambiguities and the unnecessary complication of the litigation by asserting broad and apparently baseless claims on behalf of some parties.

Plaintiffs base this claim on the provisions of La. Civ. Code arts. 667, 668, and 669. Article 667 provides that a proprietor may do with his estate whatever he pleases, but he cannot make any work on it which may deprive his neighbor of the liberty of enjoying the neighbor's estate or which may be the cause of damage to the neighbor. Article 668 explains that the limitation does not apply if it should merely occasion "some inconvenience" to the neighbor, such as darkening the neighbor's light by raising one's house. Article 669 continues that if the "works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, ... their sufferance must be determined by the rules of the police, or the customs of the place." These articles have been interpreted and applied to a variety of settings over the past several decades.

IP argues that Plaintiffs have not stated a claim because they have not alleged injury beyond a mere inconvenience. IP points to Plaintiffs' rather generic allegations that they have "been injured and damaged" or suffered "damage to real property" due to emissions. Plaintiffs, however, also specifically alleged that the Facility discharged materials, which are identified with a fair degree of detail, that have been deposited onto Plaintiffs' real property, damaging both the value of the property and causing health problems for Plaintiffs. Plaintiffs also specifically accuse IP of "dumping its waste, debris, and ash on and near Plaintiffs' properties and failing to remove those deposits." FAC, ¶ 33. These allegations are more than conclusions and go beyond descriptions of mere unavoidable discomforts and

annoyances occasioned by the operation of a lawful business. The very general Code articles obviously require a great deal of factual detail before they can be finally applied, but that level of detail is not required to survive Rule 12(b)(6) review. Plaintiffs have presented adequate facts to allow the claim to survive and be tested by a more substantive means.

IP raises a second attack on this private nuisance count. The alleged omissions from the Facility are said to have affected the public at large, but Louisiana law permits Plaintiffs to bring a private nuisance action only if Plaintiffs have sustained a "special injury." IP argues that Plaintiffs have not alleged such a special injury. It cites State ex rel. Dema Realty Co. v. McDonald, 121 So. 613 (La. 1929) for this requirement.

The nuisance at issue in Dema was a business that operated in violation of zoning laws, which laws gave local government officials authority to take action to abate the nuisance. A private nuisance suit was filed by a neighboring landowner, and the question was whether he had the right to abate the nuisance where the authorities had failed to do so. The Court stated the rule "that a public nuisance may under certain conditions and circumstances become a private nuisance - public in its general effect upon the public - private as to those who suffer a special or particular damage therefrom apart from the common injury." The landowner was held to have the right to enjoin the nuisance, despite the public character of the nuisance, because the landowner would suffer a special or particular damage in the form of a $2,000 loss in property value.

The FAC also survives this argument. The Facility may have inconvenienced the community at large by its smell and various forms of alleged pollution, but these Plaintiffs, like the plaintiff in Dema, allege that they were specifically and directly impacted by the discharges that were deposited on their property in the area near the Facility. Plaintiffs contend IP used their properties as "supplementary dumping grounds." These allegations are adequate to demonstrate a claim for more than a general nuisance to the Bastrop-area community at large. IP will have to use discovery to explore the details of the particular injuries claimed.

**Public Nuisance**

Plaintiffs allege that the discharges unreasonably interfere with the health, safety, and property rights of the surrounding community and constitute "a public nuisance to a large number of persons." This allegation is the basis of a separate count titled Public Nuisance. FAC, ¶¶ 45-50. IP argues that Louisiana law does not recognize a cause of action for public nuisance. To the extent the term has been used in the case law, IP argues, it has arisen in the context of state or local authorities enjoining a prohibited practice under statutes such as La.R.S. 13:4711.

In Carbajal v. Vivien Ice Co., 104 So. 715 (La. 1925), a residential property owner filed suit to enjoin the erection of an ice plant in her residential neighborhood, on grounds that the plant would violate various property restrictions and ordinances that prohibited businesses in the area. The plaintiff argued that the plant would create a nuisance in the

neighborhood by disturbing the peace and quiet. The defendant argued that the plaintiff, as a citizen and taxpayer, had no cause of action or standing to champion the rights of the public in abating a public nuisance. The Court agreed, but added that a citizen "may sue to abate a nuisance, although it be a public one, provided that, if the nuisance is not abated, he will suffer a special damage therefrom different from that which is common to all." Carbajal, 158 La. at 788-89. "In such instance the nuisance is both a public and private one, and it is its private character that gives the cause of action to the individual." Id. at 789. The plaintiff landowner was found to have adequately asserted such special damage because of the close proximity of her property to the contemplated factory so that her property would be affected differently from property in the community in general. See also 12 La. Civ. Law Treatise, Tort Law Section 18:9 (2d Ed.) ("In order for a private person to sue for 'public nuisance' he must show that he has suffered special and particular damages therefrom.")

     Plaintiffs allege that IP discharged pollutants in violation of state and federal laws and caused personal injury and property damages to both Plaintiffs and the community. That the allegations describe a possible "public nuisance" is not enough, alone, to (1) state an actionable claim by Plaintiffs or (2) require dismissal of Plaintiffs' nuisance claim. The alleged nuisance may be general or public in nature, as discussed in Dema and Carbajal, but Plaintiffs have alleged special and particular damage to themselves and their property, which permits their private nuisance count to go forward. The same is true with respect to this count.

The court should allow the public nuisance count to remain in the complaint. In the end, the requirement of special and particular damage makes the elements of both nuisance theories identical, so neither party really gains or loses anything by the presence or absence of this separate count.

**Negligence**

Count IV of the complaint is titled Negligence. Plaintiffs incorporate their earlier allegations and allege that IP breached a duty of reasonable care in the operation and maintenance of the Facility by releasing hazardous substances onto Plaintiffs' properties and persons, and suppressing information about the release. FAC, ¶¶ 56-61.

IP insists that Plaintiffs should have alleged what substances IP released, when the releases occurred, and what information IP allegedly suppressed. IP also faults Plaintiffs for not being specific as to which Plaintiffs suffered particular health claims such as cancer, birth defects, and other health conditions.

It is certainly desirable for a complaint to specify the damages claimed by particular plaintiffs, but in larger cases that is sometimes unwieldy if not impossible. The complaint in this case alleges a variety of health damages among more than 70 individuals. The Twombly plausibility standard does not require a detailed listing of the problems claimed by each of those persons. It is sufficient that the complaint has provided a short and plain statement of the claims that rises beyond possibility and demonstrates a plausibility of the claims.

The appropriate way to learn the details of such claims is through discovery, and the several Plaintiffs have already been presented with questionnaires aimed at getting answers to IP's questions. It is recommended that the court find the negligence count adequate despite the lack of individual detail, but keep IP's concerns in mind when assessing the adequacy of Plaintiffs' questionnaires and other discovery responses about the detail of Plaintiffs' claims.

IP also faults this count for not adequately alleging a breach of duty. Plaintiffs allege that IP dumped dioxins and other cancer causing materials on their property and caused them cancer, birth defects, and other health problems. They allege that IP knew of its actions but suppressed the information. Those facts, which must be accepted as true at this stage, give fair notice of a claim without the need to identify particular chemicals, release dates, and other details. As with the claimed damages, those factual details can be explored through discovery. The negligence claim should not be dismissed because of their absence from the already lengthy and fact-filled FAC.

**Wantonness and Intentional Infliction of Emotional Distress**

Count V of the complaint is titled Wantonness and Intentional Infliction of Emotional Distress. It repeats the earlier allegations and alleges that IP's acts constitute wanton negligence and exhibit a wilful, wanton and reckless disregard for Plaintiffs' safety and health. FAC, ¶¶ 62-67.

IP argues that (1) Louisiana does not recognize a claim for wantonness and (2) the FAC does not set forth facts that would meet Louisiana's demanding standard for pleading a claim of intentional infliction of severe emotional distress. See White v. Monsanto Co., 585 So.2d 1205 (La. 1991). Plaintiffs' respond that the count "does not allege a cause of action itself but alleges the factual predicate for the recovery of punitive damages on the tort claims." Plaintiffs go on to argue that punitive damages could be available depending on the applicable state law, which issue cannot be decided until there is discovery.

Plaintiffs' concession makes it appropriate to dismiss any claim for recovery based on the theories of wantonness or intentional infliction of emotional distress. The facts alleged under the count, as well as the other facts in the FAC, will not disappear by that dismissal but will remain available for Plaintiffs to draw upon with respect to the punitive damages argument, which has not yet been presented to the court.

**Negligence Per Se**

Count VI of the FAC is titled Negligence Per Se**.** The allegations in the count do not add any significant facts beyond those already asserted. FAC, ¶¶ 68-73.

IP argues that Louisiana does not recognize a negligence per se cause of action. See Bellsouth Telecommunications, Inc. v. Eustis Engineering Co., Inc., 974 So.2d 749, 752 (La. App. 4th Cir. 2007) ("Louisiana has no negligence per se doctrine.") Plaintiffs' memorandum moves from a discussion regarding Count V to a discussion about Count VII, with no mention of Count VI. Accordingly, it is recommended that Count VI be dismissed.

**Fraudulent Suppression**

Count VII is titled Fraudulent Suppression. Plaintiffs allege that state and federal environmental statutes and regulations create duties on the part of IP to disclose, report, and warn of potential exposure to hazardous and toxic chemicals and wastes. They allege that IP breached those duties by failing to warn Plaintiffs of emissions, not advising them of means of protection from exposure, and failing to disclose that emissions included material that is highly dangerous to human health. FAC, ¶¶ 74-79.

IP argues that Louisiana does not recognize a tort claim for fraudulent misrepresentation; the Civil Code articles regarding fraud are limited to matters of contract. Newport, Ltd. v. Sears, Roebuck & Co., 6 F.3d 1058, 067 (5th Cir. 1993). ("To recover under article 1953, Newport must demonstrate the existence of a contract.") Plaintiffs respond by pointing insistently to La. Civ. Code art. 1953 but without citing any jurisprudence that would allow them to base a claim on the article in this setting.[2]

Plaintiffs have not specifically argued it, but Louisiana does recognize a cause of action for delictual fraud, which is not necessarily based on a contract. A plaintiff may bring an action in tort under Article 2315 for fraud (negligent misrepresentation) if he shows that the defendant owed him a legal duty to disclose information. Free v. Abbott Laboratories,

---

[2] Article 1953 is found in the section of the Code that describes vices of consent, such as error and duress. It provides: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

Inc., 164 F.3d 270, 274 (5th Cir. 1999). The Fifth Circuit has also observed that the elements of a Louisiana delictual fraud cause of action include a misrepresentation of a material fact. Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 627 (5th Cir. 1999). Plaintiffs have not alleged any misrepresentation of information. They allege only that IP did not make affirmative representations regarding its Facility.

Assuming Plaintiffs could muster authority to permit a delictual fraud claim to be stated for omissions, Plaintiffs have not satisfied the higher pleading requirement of Fed. R. Civ. Proc. 9(b). That rule requires a plaintiff, in alleging fraud or mistake, to state with particularity the circumstances constituting fraud. The rule was applied to state law claims of common law fraud and negligent misrepresentation in Williams v. WMX Technologies, Inc., 112 F.3d 175 (5th Cir. 1997). The Court held that the plaintiff making such a claim must allege the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby. Williams, 112 F.3d at 177. Plaintiffs are asserting fraud by omission, so they should have identified with at least a fair degree of particularity the alleged omissions. Plaintiffs have not done so, and they base their general assertions that IP omitted information about discharges from the Facility. There is no hint as to the time of the omissions or the particular emissions that should have been disclosed. For all of these reasons, the fraudulent suppression count should be dismissed.

**Unjust Enrichment**

Plaintiffs assert a claim for unjust enrichment in Count VIII of the FAC. They allege that IP has been enriched by its failure to prevent and control discharges onto their persons and properties, and it would be inequitable for IP to retain the benefits of its actions without paying value to Plaintiffs.

The remedy of unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code art. 2298. Plaintiffs in Boudreaux v. Jefferson Island Storage asserted a claim for trespass and unjust enrichment. The Fifth Circuit found that the trespass claim was barred by Louisiana jurisprudence applicable to that particular setting, but the claim for trespass nonetheless barred the unjust enrichment claim. The law provided a plausible trespass remedy, so unjust enrichment was not an appropriate cause of action. No gap in the law existed that prevented the plaintiffs from pursuing a remedy at law. Boudreaux, 255 F.3d at 275. See also Walters v. MedSouth Record Management, LLC, 38 So.3rd 245 (La. 2010) (plaintiff who pleaded negligence claim could not seek recovery under unjust enrichment theory even though the negligence claim was prescribed).

This court should, as in Boudreaux and Walters, dismiss the unjust enrichment claim. These Plaintiffs have alleged delictual claims that should survive a motion to dismiss. There is no gap in the law that would permit the use of the subsidiary theory in this case.

**Class Action Allegations**

Plaintiffs state that they bring this action on behalf of themselves and a class of similarly situated persons, whom they describe as "all persons damages (sic) by the hazardous substances, pollutants, contaminants and other toxic materials released into the environment from the Facility." FAC, ¶ 87. IP argues that the class allegation should be dismissed because Plaintiffs have not alleged an ascertainable class.

"The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." John v. National Security Fire & Casualty Company, 501 F.3d 443 (5th Cir. 2007). "Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." Id. One requirement is that the class be susceptible of a precise, rather than amorphous or imprecise, definition. The definition must make it administratively feasible for the court to determine, based on objective and practical criteria, whether a person is or is not a member of the class. And the definition is inadequate if the merits must be examined to determine class membership. Moore's Federal Practice, § 23.21[1] - [3][c].

Plaintiffs' broad and imprecise "all persons damaged" proposal is not a precisely defined class. It is difficult to imagine a more broadly defined class in any case than "all persons damaged" by the defendant. Given this lack of precision, the class action allegations should be dismissed. This will not prevent Plaintiffs from attempting to craft a lawful

definition of a class and timely moving for leave to amend their complaint. As the FAC stands, however, the allegations are insufficient and should be dismissed.

Accordingly,

**IT IS RECOMMENDED** that IP's Motion to Dismiss (Doc. 11) be granted in part by dismissing Count V (Wantonness and Intentional Infliction of Emotional Distress), Count VI (Negligence Per Se), Count VII (Fraudulent Suppression), Count VIII (Unjust Enrichment), and the class action allegations found in the First Amended Complaint. It is recommended that the motion be denied in all other respects.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of September, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE