UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DONALD SADLER, ET AL.** | **CIVIL ACTION NO. 09-1254** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **INTERNATIONAL PAPER CO.** | **MAG. JUDGE MARK L. HORNSBY** |

**RULING**

Pending before the Court is Plaintiffs' Motion to Hold Hearing on Defendant's Expert Witness Exclusion Motion and Motion to Modify Case Management Order ("Motion to Hold Hearing and Modify CMO") [Doc. No. 176]. Defendant International Paper Co. ("IP") opposes the motion. [Doc. No. 183].

Also pending before the Court is IP's related Motion to Strike Plaintiffs' Expert Affidavits and Supplemental Reports ("Motion to Strike") [Doc. No. 184]. Plaintiffs opposes IP's motion. [Doc. No. 194].

For the following reasons, Plaintiffs' Motion to Hold Hearing and Modify CMO is DENIED, and IP's Motion to Strike is GRANTED.

**I.  Procedural Background**

On July 28, 2009, Plaintiffs brought suit against IP, which formerly operated a paper mill in Bastrop, Louisiana, for trespass, public nuisance, private nuisance, negligence, intentional infliction of emotional distress, negligence *per se*, fraudulent suppression, and unjust enrichment, all based on IP's alleged release of hazardous substances into the air.

After some motion practice before the Court, on February 23, 2011, Magistrate Judge Mark

L. Hornsby conducted a telephone status conference with counsel. [Doc. No. 50]. As a result of that conference, counsel agreed to file a proposed Case Management Order ("CMO") no later than March 31, 2011. *Id.* On March 31, 2011, the parties filed their proposed CMO. [Doc. No. 60]. On May 11, 2011, Magistrate Judge Hornsby adopted the proposed CMO. [Doc. No. 64].

On March 2, 2012, on the parties' joint motion, Magistrate Judge Hornsby struck and dismissed Plaintiffs' class action allegations in their Third Amended Complaint and extended certain deadlines in the CMO, including the deadline for Plaintiffs to make expert disclosures.

On August 8, 2012, Magistrate Judge Hornsby granted another joint motion for extension of the CMO deadlines. [Doc. No. 105]. Among others, the order extended the discovery deadline and the deadline for Plaintiffs to make expert disclosures.

On March 27, 2013, Magistrate Judge Hornsby granted a motion for extension of the CMO deadlines to extend the time for the taking of Plaintiffs' experts' depositions and serving IP's expert disclosures. [Doc. No. 128].

On April 19, 2013, Magistrate Judge Hornsby granted another extension of the CMO deadlines, again extending, among others, the deadline for the taking of Plaintiffs' experts' depositions.

On September 9, 2013, IP filed seven motions *in limine* [Doc. Nos. 135-141], which are currently pending and which seek to exclude all Plaintiffs' experts. Additionally, that same day, IP filed a Motion for Summary Judgment on Plaintiffs' Trespass, Public Nuisance, and Property Damage Claims [Doc. No. 142] and a Motion for Summary Judgment and Partial Summary Judgment on Certain Test Plaintiffs' Claims [Doc. No. 143].

In response, Plaintiffs moved for an extension of time to respond, which was granted by the

Court over IP's opposition. [Doc. No. 162]. Plaintiffs' opposition memoranda to all motions were due December 2, 2013. *Id.* Replies were due December 30, 2013. *Id.*

On November 19, 2013, Plaintiffs moved to continue the hearing on IP's motions for summary judgment [Doc. Nos. 142 and 143]. *See* [Doc. No. 163]. After considering the motion and IP's opposition, the Court denied Plaintiffs' motion. [Doc. No. 166].

On December 2, 2013, Plaintiffs filed their memoranda in opposition to all the pending motions except one. *See* [Doc. Nos. 167, 168, 169, 170, 171, 172, 173, 177]. Plaintiffs did not oppose IP's pending Motion for Summary Judgment on Plaintiffs' Trespass, Public Nuisance, and Property Damage Claims [Doc. No. 142].

However, on December 2, 2013, Plaintiffs also filed the instant Motion to Hold Hearing and to Modify CMO. [Doc. No. 176]. On December 27, 2013, IP filed a memorandum in opposition to this motion. [Doc. No. 183].

On December 30, 2013, IP filed the pending Motion to Strike [Doc. No. 184]. On January 20, 2014, Plaintiffs filed a memorandum in opposition to the Motion to Strike. [Doc. No. 194].

Because the issues in the pending motions overlap, the Court will address them together.

**II.     Parties' Arguments and Relevant Facts**

    **A.     Plaintiffs' Motion to Hold Hearing and Modify CMO**

Under the CMO, as modified, Plaintiffs were required to make expert disclosures by February 27, 2013. [Doc. No. 105]. By agreement of counsel, Plaintiffs provided those disclosures one day late on February 28, 2013.

However, without leave of Court or agreement of counsel, on May 3, 2013, Plaintiffs provided a second report from their expert, Dr. William Clark. Relying on Dr. Clark's opinions in

the second report, Plaintiffs' medical expert, Dr. Marshall Scott Irby, issued a second report on June 3, 2013, which also includes findings from medical examinations of seven Plaintiffs conducted after the deadline. Finally, each of Plaintiffs' seven experts, including Dr. Clark and Dr. Irby, filed supplemental affidavits on December 2, 2013.

In their motion, Plaintiffs assert that the Court should reject IP's argument that any and all work performed by Plaintiffs' experts after February 28, 2013, should be excluded from evidence. Plaintiffs contend that they complied with the CMO and Federal Rule of Civil Procedure 26 by timely providing complete expert reports to IP and then supplementing the initial reports after the development of additional evidence. [Doc. No. 176, p. 8 (citing Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii); Fed. R. Civ. P. 26(e))].

In the alternative, if the Court finds that the additional reports and affidavits are not "supplemental" under Rule 26(e), Plaintiffs assert that the reports and affidavits should not be excluded as a discovery sanction under Rule 37. Plaintiffs assert that under Rule 16 they have shown good cause for the Court to modify the CMO and permit Plaintiffs to present these additional reports and affidavits as part of the evidence.

In support of their arguments, Plaintiffs explain that they timely served IP with discovery requests, but that IP produced 54,139 files and over 1,000,000 pages without providing the data on actual emissions that Plaintiffs needed or any direction as to where this data could be found. After reviewing the files, Plaintiffs found a number of references to electronic/native modeling files which were not produced. When asked, IP directed them to a third party contractor, URS Corporation ("URS"), which had provided air permitting services to IP, and Plaintiffs then directed a subpoena to URS. In the meantime, Plaintiffs' expert, Mr. William A. Williams, created a model using limited

air modeling data from the Louisiana Department of Environmental Quality ("LDEQ") and the point source permit information IP had supplied for years 1975-2007. He also used meteorological data from Shreveport. Dr. Clark relied on Mr. Williams' model to fashion his opinions on air model predictions (Model #1). After Dr. Clark's review, Mr. Williams obtained meteorological data from Monroe because it is closer to Bastrop (Model #2).

Plaintiffs began receiving data from URS on February 1, 2013. Plaintiffs received a large number of database files, spreadsheets, native air modeling input and output files, meteorological data files, word processing documents, PDF documents, and miscellaneous other files. When Mr. Williams tried to compare these files with the files produced by IP, he could not reconcile the data, so he did not attempt to modify Model #2. Mr. Williams began work on a third model using the URS data.

After Dr. Clark's report issued on February 28, 2013, Mr. Williams continued to work for 2 months on Model #3, allegedly based on actual emissions. His completed Model #3 covers years 2004 and 2005, and Plaintiffs intend to extrapolate for years 2003, 2006, and 2007. The Model #3 numbers are actually lower than those in Model #2, so on May 3, 2013, Dr. Clark issued another report relying on the Model #3 figures. Plaintiffs provided this report to IP and to Plaintiffs' other experts to consider how Dr. Clark's May 3, 2013 report impacted their opinions. After receipt of Dr. Clark's second report, IP deposed him on May 15 and 16 and June 13, 2013, but declined to ask him questions about the second report, objecting that these opinions were not contained in the February 28, 2013 report.

Plaintiffs' medical expert, Dr. Marshall Scott Irby, issued a second report on June 3, 2013, which relies on Dr. Clark's second report, but which also includes findings from medical

5

examinations of seven Plaintiffs conducted after the deadline.

Plaintiffs' other experts concluded that the new report did not change their opinions, but all seven of Plaintiffs' experts issued supplemental affidavits, which were not filed or provided to IP until December 2, 2013.

Now, according to Plaintiffs, IP moves to exclude the expert opinions because they are based on permitted emissions rather than actual emissions, even though IP was served with Dr. Clark's report before his deposition and had every opportunity to question him about it. Plaintiffs contend that this is gamesmanship that should not be permitted by the Court.

Based on this chain of events, Plaintiffs argue that Dr. Clark and the other experts did not change their opinions, but supplemented their earlier reports with "statements about more refined data." [Doc. No. 176, p. 9]. Even if the Court finds that these reports are not supplemental, Plaintiffs argue that the Rule 37 sanction of exclusion is inappropriate because (1) Plaintiffs' failure to provide supplemented reports timely was substantially justified by IP's own failure to provide discovery within its "control"–albeit in the hands of URS, and (2) Plaintiffs' failure was harmless when Dr. Clark's May 3, 2013 report was provided to IP prior to his deposition, and this Court could grant a continuance to allow the cross-examination of all experts about this "crucial" evidence. [Doc. No. 176, p. 12]. Additionally, Plaintiffs move the Court for a hearing on IP's pending motions in limine to hear testimony from Dr. Clark on his methodology, facts and data considered, and the application of methodology to facts. Plaintiffs suggest that this hearing would provide IP with the opportunity to conduct additional discovery of Dr. Clark and any other Plaintiff expert.

IP filed a memorandum in opposition to Plaintiffs' Motion for Hearing and to Modify the CMO and a separate Motion to Strike. IP responds that Plaintiffs waited months for their experts

to "extensively revise their Rule 26 expert reports with new opinions, new work, and new references." [Doc. No. 183, p. 1]. IP points out that Plaintiffs have offered three categories of new expert work via supplemental report or affidavit: (1) Dr. Clark's supplemental May 3, 2013 report, which allegedly compares reported and permitted emissions of the chemical $SO^2$, but "does not contain any modeling outputs or exposure concentrations"; (2) Dr. Irby's June 3, 2013 supplemental report which includes findings from medical examinations of seven Plaintiffs conducted after the deadline; and (3) affidavits from each of Plaintiffs' seven experts filed on December 2, 2013, which include "new opinions, new analysis, and numerous new references." [Doc. No. 183, p. 1].

IP argues that Plaintiffs' motion should be denied for four reasons. First, IP argues that it did not violate any discovery rules because the parties negotiated and filed with the Court a "Joint Report Regarding the Discovery of Electronically Stored Information" ("Joint ESI Report") [Doc. No. 70] over two years ago, and its actions did not violate the Joint ESI Report. IP points out that it disclosed on December 8, 2011, that URS was its third party contractor for air emissions-related services. Nevertheless, Plaintiffs did not subpoena URS until July 20, 2012, did not visit URS offices until three months later, and did not actually provide URS with a production request until December 11, 2012. Even though URS' attorney sought clarification of the production request on the same day it was received, Plaintiffs did not respond until six weeks later. Finally, even if the Court accepts Plaintiffs' assertions regarding discovery, IP argues that this finding would support only the issuance of a second report from Dr. Clark, not the untimely reports from Dr. Irby and late affidavits from all the experts.

Second, IP argues that Plaintiffs are actually attempting to contradict the language of Rule 26 and the Court's CMO, which provides that "[n]o party shall be permitted to supplement or amend

expert disclosure . . . [after the CMO's] deadlines without prior Court approval." [Doc. No. 60, p. 14]; [Doc. No. 64]. Instead, according to IP, Plaintiffs ignored the deadlines and knowingly submitted incomplete reports and then waited from February until December 2013 to seek leave of Court to supplement the reports. IP contends that it objected to the "supplemental" reports at the time they were provided and that Plaintiffs' counsel stated in June, 2013 that he would seek leave of court to supplement, but did not do so until December, 2013. IP denies that Dr. Clark's report contains no new opinions, arguing that his December 2, 2013 affidavit indicates that he used a completely new theory of assessing Plaintiffs' exposure based on actual emissions rather than permitted emissions as used in his February 2013 report. Dr. Irby, likewise, according to IP, has "substantially revise[d] his report to reflect the findings from medical examinations conducted well after the Court-ordered deadline." [Doc. No. 183, p. 14].

Third, IP argues that Plaintiffs have not shown good cause to modify the CMO because Plaintiffs' own lack of diligence caused this issue as to Dr. Clark, and they offer no explanation for the issue with Dr. Irby and the untimely affidavits. According to IP, Dr. Clark's initial report was not complete and supplementation was not meant to fix problems with an incomplete report. Dr. Clark also "supplemented" with over twenty articles that were available at the time of his initial report.

Fourth, IP argues that it would suffer unfair prejudice and the Court would be burdened with additional proceedings if Plaintiffs are permitted to revise their expert reports in contravention of the CMO. IP points out that there has been an exchange of 12 expert reports, and IP consented to Plaintiffs' requested extensions five times. [Doc. Nos. 99, 105, 118, 128, & 130]. IP argues that it would now be forced to re-do thousands of hours of expert and attorney work when Plaintiffs'

8

counsel assured its counsel in May and June that they would seek leave of Court well before the depositions if they wanted to rely on supplemental reports. IP points out that at the time Dr. Clark issued his second report, IP had already deposed Drs. Cormier and Goldstein who relied on Dr. Clark's first report. Dr. Irby's supplemental report was not provided until June, 2013, after IP had deposed all experts. Dr. Irby's report was also provided after IP's own medical causation expert had completed his medical examinations of the test Plaintiffs. IP contends that a continuance cannot cure the prejudice to it because, during the nine months between the date Plaintiffs should have filed this motion and the actual date of filing, IP analyzed seven reports, spent eleven days deposing experts, engaged five experts to offer opinions on the Rule 26 reports, retained a medical doctor to conduct fifteen medical examinations and drafted seven motions in limine that required hundreds of pages of briefing and 163 exhibits.

Finally, IP does not oppose a hearing on the pending motions *in limine* for the Court's benefit, but does oppose a hearing for the purpose of allowing it to "take discovery" of the new expert opinions. IP argues that this would transform a live hearing into Court-supervised depositions. Then IP's own experts would need to supplement their reports, and IP would need to supplement its motions in limine.

    **B.    IP's Motion to Strike**

IP separately filed a Motion to Strike [Doc. No. 184], asserting consistently with its opposition memorandum that the supplemental reports of Dr. Clark and Dr. Irby and all the expert affidavits should be stricken from the record in this matter because they include "wholly new expert opinions, analyses, and references that plaintiffs failed to timely disclose, and that failure is not substantially justified and is not harmless." *Id.*

9

In response, Plaintiffs filed an opposition memorandum [Doc. No. 194]. Plaintiffs contend that the Motion to Strike is "premature" because its Motion to Hold Hearing and Modify CMO is still pending. *Id.* at p. 2. Additionally, Plaintiffs reiterate their arguments that the affidavits and reports do not constitute new opinions or new work, but merely supplement their earlier reports. Plaintiffs then go on to attack the bases and conclusions of IP's own expert, Dr. Daugherty.[1]

**III.    Law and Analysis**

Rule 26(a)(2)(B) provides that an expert's report "must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them." The CMO in this case reiterated that all expert disclosures "shall be fully compliant with . . . Rule 26(a)(2)." [Doc. No. 60]. Under Rule 26(e), parties have a duty to "supplement or correct" their Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during this discovery process." FED. R. CIV. P. 26(e)(1)(A). Given the number of Plaintiffs in this case and the division of the case management into phases, the CMO provided that "[n]o party shall be permitted to supplement or amend an expert disclosure provided in Phase 1 or relating thereto after the foregoing deadlines without the Court's prior approval." [Doc. No. 60].

The Fifth Circuit has made clear that any supplemental disclosure is not to take the place of a party's burden under Rule 26(a).

[The CMO] and Rule 26(a) clearly require[] that the *initial* disclosures be complete

---

[1] Plaintiffs did not file a motion *in limine* by the deadline set forth in the CMO or otherwise attempt in some manner to exclude Dr. Daugherty's analysis and conclusions until this opposition memorandum.

> and detailed. The purpose of rebuttal and supplementary disclosures is just that—to rebut and supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information.

*Sierra Club v. Cedar Point Oil Co., Inc.,* 73 F.3d 546, 572 (5th Cir. 1996).

For violations of the duties under Rule 26(a) or (e), Rule 37(c) provides the sanction. The Court may exclude the information or witness from trial, "unless the failure was substantially justified or is harmless." Rather than ordering exclusion, the Court, "on motion and after giving an opportunity to be heard . . . (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."

Rule 16 addresses the scheduling order or CMO. Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent." Rule 16(f)(1)(C) provides that the sanctions for a party's or its attorney's failure to "obey a scheduling or other pretrial order" may include "those authorized by Rule 37(b)(2)(A)(ii)–(vii)."

In this case, it is clear that Plaintiffs have failed to comply with Rule 26 and the CMO. According to Plaintiffs' own arguments, they knowingly submitted an expert report from Dr. Clark that was based on permitted emissions, rather than the actual emissions of the Bastrop mill. Plaintiffs' expert, Mr. Williams, was already working on another model at the time that Dr. Clark submitted his first expert report, yet Plaintiffs failed to take any reasonable action to alert IP or this Court to their alleged need for additional time to review and analyze discovery. Plaintiffs compounded their knowing submission of an incomplete and/or inaccurate expert report because their other experts relied on Dr. Clark's February 28, 2013 opinion.

Further, Plaintiffs failed to notify IP or this Court of any issue with its expert reports until

May, 2013, three months later, when they provided IP with Dr. Clark's second report without Court approval. At that point, IP had already deposed some of Plaintiffs' experts and were to depose Dr. Clark within a few days. When IP raised its objections to Dr. Clark's so-called supplemental report, Plaintiffs' counsel indicated that they would present the issue to the Court, but, inexplicably, they did not. Instead, Plaintiffs went on to give IP a second report from Dr. Irby in June, 2013, four months after the deadline. Plaintiffs only presented this Court with affidavits from all their experts and filed the instant motion on December 2, 2013, nine months after the Rule 26 expert disclosures were due, after IP had filed motions *in limine* to exclude Plaintiffs' expert reports, and after Plaintiffs received an extension of time to respond to the pending motions in limine.

Even if the Court found that IP failed to comply with its discovery obligations (which it does not), Plaintiffs ignored their own obligations under Rule 26 and the CMO. Plaintiffs had more than one option: they could have moved for an extension of the expert disclosure deadline, they could have filed a motion to compel or raised objections to the Court of IP's alleged failure to comply with reasonable discovery requests, or they could have notified IP at the time the first report was provided that they were in the process of preparing a second report using discovery from URS.[2] Plaintiffs took none of these actions. As a result, IP's experts and attorneys prepared for depositions based on the initial reports, IP's attorneys took depositions of Plaintiffs' experts based on the initial reports, and IP reasonably filed extensive motions in limine.

Moreover, Plaintiffs have not filed a reply and thus apparently do not dispute IP's factual allegations regarding Dr. Irby's reports. The Court finds those allegations to be consistent with the

---

[2] While this option would not have been in compliance with Rule 26 or the CMO, it would at least have given IP notice of Plaintiffs' intent to provide another report.

record evidence. When deposed, Dr. Irby clearly testified that he did not examine the seven test Plaintiffs in the eighteen-month period between their selection and the deadline for his expert report, even though he was not prevented from doing so. Yet, without Court approval or explanation, Dr. Irby examined those seven test Plaintiffs prior to the issuance of his second report four months later. Plaintiffs' complaint about IP's discovery responses had no correlation with Dr. Irby's failure to examine the Plaintiffs, and his second report does not contain "supplemental" information, but information that was available to him at the time of the issuance of his initial report. Plaintiffs then caused a greater hardship on IP by failing to provide Dr. Irby's second report until after IP had already deposed Plaintiffs' other experts, particularly Dr. Goldstein who, like Dr. Irby, is held out to be an expert in pulmonology.

 Finally, with regard to the affidavits filed on December 2, 2013, Plaintiffs have not offered an explanation to justify its filing of extensive affidavits nine months after the expert disclosures deadline. The Court has previously considered affidavits from experts in other cases which sought to respond to issues raised in a motion filed by an opposing party. However, the affidavits in this case do not seek merely to clarify the opinions of Plaintiffs' experts, but are extensive supplementation, elaboration, and revision of the opinions expressed in their reports.

 Under the undisputed facts, the Court finds that Plaintiffs' actions in this case are neither substantially justified nor harmless. Likewise, Plaintiffs have failed to establish good cause to modify the CMO put in place two and one-half years ago and under which both parties have been granted a number of reasonable extensions. The actions and the inaction of Plaintiffs and their counsel compel the Court to employ sanctions provided for under Rule 37. Although the Court has considered lesser sanctions, the Court finds that holding a hearing on IP's pending motions *in limine*

will not resolve the problems caused by Plaintiffs and their counsel. Given the complicated nature of this case, the length of Plaintiffs' delay, and the great cost to IP of Plaintiffs' actions and inaction, Plaintiffs' Motion to Hold Hearing and Modify CMO is DENIED[3], and IP's Motion to Strike is GRANTED. The Court orders the exclusion of Dr. Clark's and Dr. Irby's second reports and all the affidavits from Plaintiffs' experts.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Hold Hearing and Modify CMO [Doc. No. 176] is DENIED, and IP's Motion to Strike [Doc. No. 184] is GRANTED. The May 3, 2013 report of Dr. Clark, the June 3, 2013 report of Dr. Irby, and the affidavits of all Plaintiffs' experts filed on December 2, 2013, are STRICKEN.

MONROE, LOUISIANA, this 30th day of January, 2014.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[3] After all briefs on the pending motions *in limine* have been reviewed, the Court will set a hearing, if necessary. Such a hearing, however, will not be used for purposes proposed by Plaintiffs, but only for the Court's elucidation.