UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

DONALD SADLER, ET AL.                    CIVIL ACTION NO. 09-1254

VERSUS                                   JUDGE ROBERT G. JAMES

INTERNATIONAL PAPER CO.                   MAG. JUDGE MARK L. HORNSBY

RULING

Pending before the Court is Defendant International Paper Co.'s ("IP") Motion for Partial Summary Judgment and Summary Judgment on Certain Test Plaintiffs' Claims.  [Doc. No. 143].  Plaintiffs filed a memorandum in opposition to the motion. [Doc. No. 177].  IP filed a reply memorandum.  [Doc. No. 193].

For the following reasons, IP's motion is GRANTED IN PART and DENIED IN PART.

I.      Facts and Procedural Background

IP formerly operated a pulp and paper mill in Bastrop, Louisiana.  IP permanently closed the mill in December, 2008.  Since that time, the physical structures at the former mill have been demolished.

On July 28, 2009, Plaintiffs, who all lived, worked, and/or resided near the former mill, brought suit against IP.  Their Complaint alleges that IP released "Hazardous substances, Particulate Matter, and Noxious Odors," which, "in fact, directly and proximately caused" health conditions, such as cancer, birth defects, and "other serious, disabling, and life-threatening diseases." [Doc. No. 51, ¶ 29].  The Complaint does not list the individual claims of each Plaintiff.

Pursuant to the Court's order, Plaintiffs have executed questionnaires that detail their

personal injury claims, including any illness, injury, or condition they allege was "caused, promoted, and/or accelerated" by their exposure to the substances allegedly released by IP. [Doc. No. 18, Exh. A at 3]. Plaintiffs also listed in the questionnaires each residence, school, and work location where they were exposed and the alleged time period of exposure.

After discovery and motion practice, there are currently 386 Plaintiffs. Pursuant to the Case Management Order ("CMO") in this case, the parties agreed that twenty-three "Test Plaintiffs" would be selected for a "Phase 1" trial. Of the original twenty-three, eight Test Plaintiffs have voluntarily dismissed their claims. The remaining fifteen Test Plaintiffs assert only personal injury claims against IP. Discovery has been conducted to ascertain the injuries of the Test Plaintiffs, the evidence supporting their claims, and their alleged damages.

Plaintiffs rely on the expert opinions of Dr. James Clark ("Clark"), who, in turn, relied on the air dispersion modeling performed by expert Mr. William A. Williams ("Williams"). Plaintiffs further rely on the general causation testimony of Dr. Stephania V. Cormier ("Cormier") and the medical opinions of Drs. Alan A. Goldstein ("Goldstein") and Marshal Scott Irby ("Irby"). In a previous ruling, the Court excluded the second and supplemental reports and affidavits of these experts, so Plaintiffs can rely only on those opinions offered timely under the CMO. *See* [Doc. Nos. 195 & 196].

Although IP has filed motions *in limine* to exclude Plaintiffs' expert opinions, IP contends that, even if the expert opinions are admissible, Plaintiffs have failed to meet their burden of proof with respect to many claims asserted.[1]

---

[1]The Court has not considered the effect, if any, of the pending motions *in limine*. The Court will rule on those motions separately.

## II.     Law and Analysis

### A.     Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

### B.     Test Plaintiffs' Claims

#### 1.     Claims of Jaunice Gorman and Roberta Anne Lambert

IP first moves for summary judgment on the claims of Plaintiffs Jaunice Gorman

("Gorman") and Roberta Anne Lambert ("Lambert"), contending that they have no evidence to support their claims of exposure.

"[S]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) (citing *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996)).

In this case, IP asserts that neither Gorman nor Lambert has offered sufficient evidence of exposure to survive summary judgment.  First, neither Williams nor Clark offers any exposure opinions concerning Gorman.  Because she cannot offer evidence of the level of her alleged exposure, IP argues that she cannot succeed on her claims.  Williams and Clark do offer opinions on the exposure of Lambert, but IP argues that she cannot succeed either because she denied that she was exposed at her residence and place of employment, claiming adverse impact only from breathing substances released from her husband's clothes when she washed them.[2] [Doc. No. 143, Exh. 61, Deposition of Lambert, pp. 127:13-128:1, 128:8-14].  None of the experts offer an opinion supporting the theory that a person can be exposed to the alleged toxic substances by breathing substances released from clothes or from touching the clothes.

In their opposition, the Test Plaintiffs do not respond to IP's specific exposure arguments as to these two Plaintiffs, stating only that Gorman and Lambert "lived in close proximity" to the mill, "were modeled," and, thus, their exposure "has been shown by [the Test Plaintiffs'] experts." [Doc. No. 177, p. 3].  The Test Plaintiffs then go on to present evidence from Irby's medical evaluations

---

[2]Presumably, her husband's clothes emitted the smell typically associated with the papermaking process.

of Gorman and Lambert.

Contrary to the Test Plaintiffs' arguments, they have failed to raise a genuine issue of material fact for trial on Gorman's and Lambert's claims.  As IP points out, Gorman was *not* modeled.  Although Lambert was modeled, she denies the alleged exposure and offers another theory of exposure unsupported by expert testimony.  Under the prevailing law, which the Test Plaintiffs do not contest, the Court need not reach the evidence of these Plaintiffs' medical conditions if they have failed to present evidence of their level of exposure.  IP's Motion for Summary Judgment is GRANTED as to Gorman and Lambert, and their claims are DISMISSED WITH PREJUDICE.

### 2.      Claims Allegedly Not Supported by General and Specific Causation

IP next moves the Court for partial summary judgment and summary judgment as to certain claims by the remaining Test Plaintiffs because the claims are not supported by expert testimony sufficient to prove general and specific causation.

A plaintiff in a toxic tort case must establish medical causation through expert testimony. *See Seaman v. Seacor Marine L.L.C.*, 326 Fed. App'x 721, 723 (5th Cir. 2009).  A plaintiff bears the burden of proving both general causation–that a substance is capable of causing the alleged injury or condition in the general population–and specific causation–that the substance did cause the plaintiff's injury or condition.  *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).

IP argues that Plaintiffs have presented no medical testimony to support any conditions other than asthma, chronic bronchitis, chronic obstructive pulmonary disease ("COPD"), coughing, and sinusitis and moves for summary judgment for any other medical conditions or illnesses. Additionally, IP contends that Plaintiffs have presented no specific medical causation testimony to

support the specific claims by each of following:

(1)     Jamieon Akins          sinus infection;

(2)     Wayne Burns            congestion and sinusitis;

(3)     J.H.                   "sinus";

(4)     D.J.                   congestion;

(5)     Ja'Lesia Mims          sinusitis;

(6)     J.E.M.                 Respiratory Syncytial Virus ("RSV"), bronchitis, sinusitis, and hoarseness;

(7)     S.N.                   RSV, runny nose, sore throat, and sinus damage;

(8)     Richard Russell        sinusitis, allergies, upper respiratory congestion, upper respiratory infections, pneumonia, nasal polyps, and nasal surgery;

(9)     Donald Sadler          double pneumonia;

(10)    Scotty Sadler          severe throat-related infections and lung-related problems; and

(11)    J.W.                   bronchitis, sinusitis, allergies, and congestion.

The Test Plaintiffs respond that "respiratory disfunction is allergy related," citing Cormier. [Doc. No. 177, p. 4]. Further relying on Cormier, they assert that IP "should not be granted partial summary judgment regarding the personal injury claims of the [Test Plaintiffs] as these symptoms are indicative of respiratory disease and not appropriate to dismiss at the summary judgment stage." *Id.* Additionally, they present the February 21, 2013 report from Goldstein that Akins, Burns, J.H., D.J., Mims, J.E.M., S.N., Russell, Donald Sadler, Scotty Sadler, and J.W. all "have asthma and or [sic] respiratory problems" and that the "depositions, deposition summaries, and the reports of Drs. Clark and Co[r]mier would support a causal relationship between exposure to dusts and chemicals

released by [IP] . . . and the development and/or exacerbations of asthma in all of these cases except for . . . Akins." [Doc. No. 177, Exh. 2].  Goldstein further states that "[i]t is [his] professional opinion, to a [reasonable] degree of medical certainty, that the toxic chemicals and particulater matter, as set forth by Dr. Clark and Corm[i]er either caused and/or contributed to the . . . patients['] respiratory medical conditions."  *Id.*

First, to the extent that IP moves for summary judgment on the Test Plaintiffs' personal injury claims for conditions other than asthma, chronic bronchitis, COPD, coughing, and sinusitis, IP's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  Assuming for purposes of this Ruling that Goldstein's testimony is admissible, that testimony is sufficient to support the identified claims **and** any symptoms, such as coughing, congestion, and hoarseness. Therefore, the Test Plaintiffs are limited to recovery for asthma, chronic bronchitis, COPD, coughing, sinusitis, and related symptoms.

To the extent that IP moves for partial summary judgment on the identified claims by certain Test Plaintiffs, the Court has considered the admissible evidence.  Cormier testified that she offers only a general cause opinion as to the seven minor Test Plaintiffs of general "respiratory effects," and, even if she has provided sufficient testimony that certain emissions *may cause* autoimmune issues, she has not offered an opinion as to any specific medical conditions and whether those medical conditions were caused by the IP emissions.  [Doc. No. 143, Exh. 20, Cormier Deposition, Vol. II, pp. 28:1-3, 41:10-16, 66:14-25; Exh. 19, Cormier Deposition, Vol. I, p. 197:15-25].  Thus, Cormier's testimony goes to general, not specific causation.  The Court also considered Goldstein's testimony.  Viewing the evidence in the light most favorable to the Test Plaintiffs, his testimony raises a genuine issue of material fact for trial whether Burns, J.H., D.J., Mims, J.E.M., S.N., Russell,

Donald Sadler, Scotty Sadler, and J.W. have asthma and/or other respiratory conditions that were caused by the IP emissions. However, Goldstein specifically excluded Akins from his findings, and there is no other admissible medical evidence in support of Akins' claims.[3]

IP's Motion for Summary Judgment is GRANTED as to Akins' claim that his sinus infections were caused by IP, but DENIED as to Burns, J.H., D.J., Mims, J.E.M., S.N., Russell, Donald Sadler, Scotty Sadler, and J.W. on those conditions that the Court has determined are recoverable (asthma, chronic bronchitis, COPD, coughing, sinusitis, and related symptoms).

### 3.    Claims of Emma Odom and Robin Payton

IP moves for summary judgment on the claims of Emma Odom and Robin Payton on three bases: they have no expert exposure evidence, they have no medical causation evidence, and they are judicially estopped from proceeding with their claims because they failed to disclose the claims in the bankruptcy proceedings.

As to the first two arguments, the Test Plaintiffs rely on the responses set forth above. For the reasons previously stated, IP is entitled to summary judgment on Odom's and Payton's claims.

Alternatively, the Court finds that IP is also entitled to summary judgment based on their failure to disclose this lawsuit in their bankruptcy filings.

Under the United States Bankruptcy Code, Odom and Payton have a continuous and ongoing

---

[3]Although the Test Plaintiffs rely on the expert opinion of Irby as well, the cited opinion was stricken by this Court in its January 30, 2014 Ruling [Doc. No. 195] and Order [Doc. No. 196].

IP also argues in its reply memorandum [Doc. No. 193] that under Local Rule 56.1 the Test Plaintiffs have admitted the facts set forth in its statement of material facts as to which there is no genuine issue to be tried by failing to specifically controvert those facts. To the extent, however, that the Test Plaintiffs controvert IP's facts in the body of their opposition memorandum, the Court has considered their recitation of evidence.

duty to report any causes of action that accrued before their bankruptcy proceedings are discharged. Because they failed to disclose the cause of action against IP to the Bankruptcy Court before filing this suit, IP contends that the claim should be barred by the doctrine of judicial estoppel.  However, if the failure to disclose was inadvertent, then judicial estoppel does not apply.

Because the issue underlying judicial estoppel is an interpretation of the federal Bankruptcy Code, contrary to the Test Plaintiffs' argument, the Court applies federal law.  *See Woodard v. Taco Bueno Rests., Inc.*, 2006 WL 3542693, at *3 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)).  Under federal law, "[j]udicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.'" *In re Coastal Plains*, 179 F.3d at 205 (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)).  "The purpose of the doctrine is 'to protect the integrity of the judicial process', by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest.'" *Id.* (quoting *Brandon*, 858 F.2d at 268) (modification in original).  "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion."  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks and citation omitted).

"A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (citing *In re Coastal Plains*, 179 F.3d at 206-07).  "Judicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that

9

undisclosed asset." *Id.*

The first prong of judicial estoppel is that the party must be asserting a position to the Court that is inconsistent with a prior legal position. The Court finds that Odom and Payton are asserting a position in this Court that is inconsistent with their position in the Bankruptcy Court.

"[T]he Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *In re Coastal Plains*, 179 F.3d at 207-08 (citing 11 U.S.C. § 521 ("The debtor shall-(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs . . . .")). "'*Any claim with potential must be disclosed*, even if it is contingent, dependent, or conditional.'" *Id*. at 208 (quoting *Westland Oil Dev. Corp. v. MCorp Mgmt. Solutions, Inc.*, 157 B.R. 100, 103 (S.D. Tex. 1993)) (emphasis in original). Thus, it is well-established law that a debtor has a duty to disclose property and assets, which include potential causes of action, to the bankruptcy court. *See* 11 U.S.C. § 541; *In re Coastal Plains*, 179 F.3d at 208; *Woodard*, 2006 WL 3542693, at *5.

The Fifth Circuit recently held that bankruptcy debtors have an ongoing duty to amend their schedule of assets in bankruptcy proceedings, including those acquired after a bankruptcy court has confirmed a bankruptcy plan. *Love*, 677 F.3d at 263. Here, it is uncontroverted that Payton and Odom failed to include this lawsuit in their schedule of assets or to amend those schedules to include this claim.

The second prong of judicial estoppel is that "the party against which estoppel is sought convinced a court to accept the prior position." *Jethroe*, 412 F.3d at 600 (citing *In re Coastal Plains*, 179 F.3d at 206-07). The "acceptance" element requires "that the first court has adopted the position

10

urged by the party, either as a preliminary matter or as part of a final disposition." *In re Superior Crewboats*, 374 F.3d at 335 (quoting *In re Coastal Plains*, 179 F.3d at 206). This requirement is satisfied where a bankruptcy court has confirmed a debtor's bankruptcy plan in reliance on the veracity of his asset schedules. *Jethroe*, 412 F.3d at 600.

Odom filed for bankruptcy under Chapter 7 on October 27, 2010, was terminated on April 28, 2011, and was discharged on March 10, 2011.  Payton and her husband filed for bankruptcy under Chapter 13 on May 27, 2011, and are currently making payments under the debt repayment plan.  Both Odom and Payton had knowledge of their potential claims against IP when this lawsuit was filed in 2009, but they failed to disclose this lawsuit as an asset in their bankruptcy.  By failing to disclose their claims, Payton and Odom convinced the Bankruptcy Court to accept their prior position: that they had no cause of action.  Thus, the second prong of judicial estoppel is also met.

The third prong of judicial estoppel is that "the party did not act inadvertently." *Jethroe*, 412 F.3d at 600 (citing *In re Coastal Plains*, 179 F.3d at 206-07).  A failure to disclose is inadvertent "only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *In re Coastal Plains*, 179 F.3d at 210.  In order for the debtor to lack knowledge of the undisclosed claim, the debtor must have been unaware of the facts giving rise to her claim when she represented that she had no potential claim to the bankruptcy court. *Jethroe*, 412 F.3d at 600.

Here, both Plaintiffs admitted in their deposition that they were aware of their claims when this lawsuit was filed in 2009 and actively participated in the case prior to filing their bankruptcy petitions.  Under these circumstances, the Court cannot say that their non-disclosure

11

was inadvertent.

Further, Odom and Payton had some motive to conceal the cause of action.  "[T]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure." *Love*, 677 F.3d at 262.  If these Plaintiffs had disclosed the lawsuit, their plan could have been modified under 11 U.S.C. § 1329, on motion of the trustee or their creditors.  Because Payton and Odom were aware of the facts giving rise to their claim and were aware that this lawsuit was pending prior to filing suit and had a motive to conceal the claim from the Bankruptcy Court, their nondisclosure was not inadvertent, and the third prong of judicial estoppel is met.

As the Supreme Court has said, "[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion."  *New Hampshire v. Maine*, 532 U.S. at 750.  Even if the elements of judicial estoppel are satisfied by a particular set of facts, application of the doctrine is not compulsory.  Moreover, the Fifth Circuit has recently held that whether to apply the doctrine "appears to lie in a holistic, fact-specific consideration of each claim of judicial estoppel that arises from litigation claims undisclosed to the bankruptcy court." *Reed v. City of Arlington*, 620 F.3d 477, 482 (5th Cir. 2010).

Balancing all of the equities, even if their claims were not otherwise subject to dismissal, the Court finds that Odom and Payton would be judicially estopped from pursuing their claims. Therefore, IP's Motion for Summary Judgment on the claims of Odom and Payton is GRANTED.

### 4.       Elements of Damage Allegedly Not Supported by Competent Evidence

Finally, IP moves for summary judgment on certain of Plaintiffs' damages claims for which Plaintiffs have allegedly failed to present evidence: special damages of past and future medical expenses and lost wages and general damages for emotional distress, loss of enjoyment of life, and loss of use and enjoyment of property.

### a.       Past Medical Expenses

To recover past medical expenses, a plaintiff must provide "competent evidence establishing that it is more probable than not that the injuries were caused by the trauma suffered." *Hall v. Folger Coffee Co.*, 857 So.2d 1234, 1248 (La. 4th App. 2003).

The Test Plaintiffs contend that they can meet their burden because their medical records "show that [they] . . . have had office visits with physicians which indicate treatment for respiratory issues due to the type of contamination emitted from the mill." [Doc. No. 177, p. 8].

On this item of damages, the Court finds there are genuine issues of material fact for trial, and IP's Motion for Summary Judgment is DENIED.

### b.       Future Medical Expenses

To recover future medical expenses, a plaintiff must offer "proof by a preponderance of the evidence that the future medical expenses will be medically necessary." *Hoskin v. Plaquemines Par. Gov't.*, 703 So.2d 207, 210-11 (La. 4th App. 1997).  Thus, the plaintiff must offer "medical testimony that [the medical expenses] are indicated and . . . their probable cost." *Hanks v. Seale*, 904 So.2d 662, 672 (La. 2005) (citing *Duncan v. Kansas City So. Ry. Co.*, 773 So.2d 670, 685 (La. 2000)).

In their opposition, the Test Plaintiffs rely only on the excluded medical report of Irby to

13

support claims for future medical expenses for Gorman and Lambert, whose claims the Court has

dismissed, and for Donald Sadler, Akins, Russell, Scotty Sadler, and Burns.  They also cite to

Goldstein's report.  First, since the Irby report has been excluded, the Test Plaintiffs cannot rely

on it to raise a genuine issue of material fact for trial.  Second, neither the Irby nor the Goldstein

report addresses all Test Plaintiffs.  Third, even as to those Test Plaintiffs the reports do address,

the reports do not state a need for future medical expenses.  Accordingly, the Test Plaintiffs

failed to raise a genuine issue of material fact for trial on future medical expenses, and IP's

Motion for Summary Judgment on this item of damages is GRANTED.

### c.   Lost Wages

To recover lost wages, "a plaintiff must prove positively that he would have been earning

the wages but for the [injury or condition] in question."  *Boyette v. United Servs. Automobile

Assoc.*, 783 So.2d 1276, 1280 (La. 2001).

IP argues that the evidence is clear that the Test Plaintiffs do not seek lost wages and

offer no evidence to support this item of damages.  Thirteen Test Plaintiffs admitted in discovery

responses that they "do not claim damages for lost income or lose wages based on any personal

injury claim associated with the alleged release of Substance from the Louisiana Mill." [Doc. No.

143, Responses to Request for Admission No. 4 contained in Exhs. 117, 118, 119, 120, 121, 122,

123, 124, 125, 126, 128, 129, and 131].  Plaintiff Scotty Sadler denied the request for admission

on lost wages, but then admitted in his deposition that he was not seeking lost income or lost

earning capacity.  [Doc. No. 143, Exh. 71, S. Sadler Deposition, p. 267:2-9].  Likewise, Payton,

who, like Scotty Sadler denied the request for admission, admitted in her deposition that she is

not seeking this type of damages.  [Doc. No. 143, Exh. 68, Payton Deposition, p. 136:9-16].

In their opposition memorandum, the Test Plaintiffs failed to respond to IP's arguments and evidence on lost wages.  Accordingly, the Test Plaintiffs failed to raise a genuine issue of material fact for trial on lost wages, and IP's Motion for Summary Judgment on this item of damages is GRANTED.

> **d.    General Damages for Emotional Distress, Loss of Enjoyment of Life and Loss of Use and Enjoyment of Property**

Although general damages cannot be calculated with the same pecuniary certainty as special damages, a plaintiff "must present competent evidence of the injuries suffered." *Costello v. Hardy*, 864 So.2d 129, 141 (La. 2004) (citing *Kosmitis v. Bailey*, 685 So.2d 1177, 1180-81 (La. 2d App. Cir. 1996)).

IP argues that the Test Plaintiffs either actively disclosed that they are seeking these general damages, were silent on the subject, unclear whether they were making these claims, or stated that they did not know whether they were making these claims.  In any case, IP argues that no Test Plaintiff has provided evidence of injuries suffered necessary to support these general damages.   Four Test Plaintiffs provide no statements regarding general damages in their discovery, and the remaining eleven Test Plaintiffs restate the allegations of the Complaint that their "medical conditions *could pose* future problems, including . . . pain and suffering, and loss of enjoyment of life."  [Doc. No. 143, Amended Responses to Interrog. No. 3, Exhs. 103, 104, 105, 106, 108, 109, 110, 112, 114, 115, and 116 (emphasis added)].

In their opposition, the Test Plaintiffs failed to respond to IP's Motion for Summary Judgment on general damages.

Based on the unopposed evidence presented, IP's Motion for Summary Judgment on the

Test Plaintiffs' request for general damages is GRANTED.

**III.   Conclusion**

For the foregoing reasons, IP's Motion for Partial Summary Judgment and Summary Judgment on Certain Test Plaintiffs' Claims [Doc. No. 143] is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as to all claims by Gorman, Lambert, Odom, and Payton, and their claims are DISMISSED WITH PREJUDICE.

To the extent that IP moves for summary judgment on the Test Plaintiffs' personal injury claims for conditions other than asthma, chronic bronchitis, COPD, coughing, and sinusitis, the motion is GRANTED IN PART and DENIED IN PART, and the Test Plaintiffs are limited to recovery for asthma, chronic bronchitis, COPD, coughing, sinusitis, and related symptoms.

To the extent that IP moves for partial summary judgment on the identified claims by certain Test Plaintiffs, the motion is also GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as to any claim by Akins that his sinus infections were caused by IP, and this claim is DISMISSED WITH PREJUDICE, but the motion is DENIED as to claims by Burns, J.H., D.J., Mims, J.E.M., S.N., Russell, Donald Sadler, Scotty Sadler, and J.W. on those conditions that the Court has determined are recoverable (asthma, chronic bronchitis, COPD, coughing, sinusitis, and related symptoms).

To the extent that IP moves for summary judgment on the Test Plaintiffs' damages claims, the motion is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED on general damages, future medical expenses, and lost wages, and the Test Plaintiffs will not be permitted to recover these items of damages.  The motion is DENIED as to past medical expenses.

16

MONROE, LOUISIANA, this 24th day of March, 2014.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE