UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DONALD SADLER, ET AL.** | **CIVIL ACTION NO. 09-1254** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **INTERNATIONAL PAPER CO.** | **MAG. JUDGE MARK L. HORNSBY** |

**RULING**

Pending before the Court is Defendant International Paper Co.'s ("IP") "Motion to Exclude the Report, Opinions, and Testimony of Dr. Allan R. Goldstein" [Doc. No. 140]. Plaintiffs filed a memorandum in opposition to the motion. [Doc. No. 169]. IP filed a reply. [Doc. No. 191].

For the following reasons, IP's motion is DENIED.

**I.     Procedural Background and Contested Opinion**

On July 28, 2009, Plaintiffs brought suit against IP, which formerly operated a paper mill in Bastrop, Louisiana ("the mill"), asserting that IP's alleged release of hazardous substances into the air caused or exacerbated certain of their health conditions. Plaintiffs, who all lived, worked, and/or resided near the mill prior to its closure in 2008, have pending claims of negligence and private nuisance against IP.[1]

In support of their claims, Plaintiffs retained Dr. Allan R. Goldstein (" Dr. Goldstein"), a pulmonologist, to provide an expert opinion. On February 28, 2013, Dr. Goldstein issued a one-page letter report in which he stated that he had "reviewed medical records, depositions, and deposition

---

[1] Plaintiffs originally brought claims of trespass, public nuisance, and for property damages, but on March 14, 2014, the Court granted IP's Motion for Summary Judgment and dismissed these claims. [Doc. No. 198].

summaries" of the test Plaintiffs.[2] He states that he also reviewed the February 28, 2013 evaluation report by Dr. James Clark and the February 20, 2013 report by Dr. Stephania Cormier.[3] [Doc. No. 151, Exh. 8, at p. 1]. Dr. Goldstein opines that "these individuals do have asthma and/or respiratory problems." *Id.* He further opines that the information he reviewed "would support a causal relationship between exposure to dusts and chemicals released by [IP] in Bastrop, Louisiana, and the development and/or exacerbations of asthma in all cases except for Jamieon Akins." *Id.* Finally, he opines that "[i]t is my professional opinion, to a reasonable degree of medical certainty, that the toxic chemicals and particulater [sic] matter, as set forth by Dr. Clark and Corm[i]er either caused and/or contributed to the above patients['] respiratory medical conditions." *Id.*

On September 9, 2013, IP filed seven motions *in limine* [Doc. Nos. 135-141], seeking to exclude Plaintiffs' experts.

On December 2, 2013, Plaintiffs filed their memoranda in opposition to the pending motions in limine. *See* [Doc. Nos. 167-173]. On the same date, Plaintiffs filed a Motion to Hold Hearing on Defendant's Expert Witness Exclusion Motions and a Motion to Modify Case Management Order ("Motion to Hold Hearing and Modify CMO") [Doc. No. 176].

On December 27, 2013, IP filed an opposition to Plaintiff's Motion to Hold Hearing and Modify CMO [Doc. No. 183]. On December 30, 2013, IP filed reply memoranda in support of its

---

[2]Dr. Goldstein issued opinions as to Plaintiffs Wayne Burns, Jaunice Gorman, J.H. (minor), D.J. (minor), Roberta Lambert, J.M. (minor), Ja'Lesia Mims, S.N. (minor), Richard Russell, Donald Sadler, Scottie Sadler, J.W. (minor). As discussed, *supra*, Dr. Goldstein did not offer an opinion that Plaintiff Jamieon Akins has asthma that was caused or exacerbated by mill emissions. Additionally, since the instant motion was filed, the Court dismissed Ms. Gorman's and Ms. Lambert's claims. [Doc. No. 200].

[3]IP also filed *Daubert* motions with regard to Drs. Clark and Cormier. [Doc. Nos. 138 & 139]. The Court will address those motions separately.

motions in limine [Doc. Nos. 186-192], as well as a Motion to Strike Plaintiffs' Expert Affidavits and Supplemental Reports ("Motion to Strike") [Doc. No. 184].

On January 20, 2014, Plaintiffs filed a memorandum in opposition to IP's Motion to Strike [Doc. No. 194].

On January 30, 2014, the Court issued a Ruling [Doc. No. 195] and Order [Doc. No. 196], denying Plaintiffs' Motion to Hold Hearing and Modify CMO, but granting IP's Motion to Strike.[4] The supplemental reports of Drs. Clark and Irby and the affidavits of all Plaintiffs' experts filed on December 2, 2013, were stricken from the record.

On March 24, 2014, the Court issued a Ruling and Judgment [Doc. Nos. 199 & 200] granting in part and denying in part IP's "Motion for Summary Judgment and Partial Summary Judgment on Certain Test Plaintiffs' Claims." The Court granted the motion as to all claims by Plaintiffs Jaunice Gorman, Roberta Anne Lambert, Emma Odom, and Robin Payton, and their claims were dismissed with prejudice. The Court granted the motion in part on Plaintiffs' personal injury claims for conditions other than asthma, chronic bronchitis, COPD, coughing, and sinusitis, limiting Plaintiffs to recovery for asthma, chronic bronchitis, COPD, coughing, sinusitis, and related symptoms. The Court also granted the motion for partial summary judgment in part on certain identified claims by certain Plaintiffs, dismissing the claim by Plaintiff Jamieon Akins that his sinus infections were caused by the mill emissions, but preserving claims by other Plaintiffs. Finally, the Court granted IP's motion in part on damages, dismissing Plaintiffs' claims for general damages, future medical expenses, and lost wages, but denying the motion as to past medical expenses.

---

[4]The Court noted in its Ruling that it would consider whether an evidentiary hearing was necessary for each *Daubert* motion, but denied a hearing at that time for the purposes sought by Plaintiffs. [Doc. No. 195, p. 14].

On April 28, 2014, the Court issued a Ruling and Judgment [Doc. Nos. 201 & 201] granting in part and denying in part IP's Motion to Exclude the Report, Opinions, and Testimony of James N. Tarr, P.E. ("Tarr"). The Court granted the motion to exclude Tarr from rendering an opinion on "negative health impact[s]" and any special responsibility owed by IP. The motion was otherwise denied, and Tarr will be permitted to offer opinion testimony at trial on fuel use and odor caused by IP's emissions.

The Court now turns to the instant motion. As an initial matter, the Court notes that a number of Plaintiffs' arguments in its opposition memoranda to the pending motions in limine are based on stricken supplemental affidavits and reports. The Court has considered only those arguments currently supported by record documents.

## II. Law and Analysis

Under Federal Rule of Evidence 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under Rule 702, a district court has considerable discretion in deciding whether to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-9 (1997) (reviewing district court's determination under abuse of discretion standard).

4

Reliability and relevance, under Rule 702, are the hallmarks of admissible testimony from an expert witness. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993); *In re MBS Mgmt. Servs., Inc.*, 690 F.3d 352, 357 (5th Cir. 2012) ("[T]he trial judge serves as a gatekeeper to ensure the reliability and relevance of expert testimony."). Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[02], p. 702-18 (1988)). In determining reliability, "the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can properly be applied to the facts in issue." 509 U.S. at 589. "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho*, 526 U.S. at 152)). However, the focus of reliability "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595.

"[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. . . . " *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotations and citations omitted). "It is the role of the adversarial system, not the court, to highlight weak evidence[.]" *Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). "Vigorous cross-examination,

5

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

Plaintiffs retained Dr. Goldstein as an expert in pulmonology. IP does not attack Dr. Goldstein's general qualifications as an expert in his given field. Instead, IP moves to exclude Dr. Goldstein's report, opinions, and testimony, arguing that they are neither helpful to the jury nor are they based on sufficient facts and reliable methodology. IP argues that (1) Dr. Goldstein's opinions on Plaintiffs' asthma are couched in terms of possibilities and thus are not helpful to the jury; (2) Dr. Goldstein's opinions of Plaintiffs' alleged asthma are not relevant or reliable because he never examined Plaintiffs or performed diagnostic testing; and (3) Dr. Goldstein's opinions as to causation are not relevant or reliable because he failed to offer an opinion on general causation, failed to give consideration to the amount of exposure, failed to rule out other exposures and conditions unrelated to the Louisiana mill, and failed to assess whether there is a temporal relationship between Plaintiffs' alleged exposure and the onset or exacerbation of their asthma.

### A. Relevance of Dr. Goldstein's Opinion

IP moves to exclude Dr. Goldstein's report, opinions, and testimony both as to Plaintiffs' diagnosis and as to causation as irrelevant. Under the applicable case law, Plaintiffs must prove at trial that they have respiratory conditions which were more likely than not caused or exacerbated by the mill emissions. First, IP contends that Dr. Goldstein's opinion as to Plaintiffs' asthma is irrelevant because Dr. Goldstein did not speak with, examine, or perform any diagnostic tests on Plaintiffs. Thus, IP argues that Dr. Goldstein cannot offer a diagnosis of asthma, only that the information in Plaintiffs' medical records is "consistent with asthma" and that Plaintiffs "could" have asthma. [Doc. No. 151, Exh. 21, pp. 10:14-12:12, 17:12-18:4, 18:22-19:16]. Second, IP argues

that Dr. Goldstein's opinions on causation are also irrelevant because he testified that Plaintiffs' asthma "could have" been caused by the IP emissions without considering the concentration of Plaintiffs' exposures, seeking to rule out other possible causes, and without assessing whether there was a temporal relationship between Plaintiffs' alleged exposure and adverse health.

In their opposition, Plaintiffs respond that Dr. Goldstein's testimony would be helpful to the jury as a medical expert on this purely medical question. His testimony is particularly helpful because some of the Plaintiffs were diagnosed with bronchitis, rather than asthma. Dr. Goldstein can explain, as he did in his deposition, that the symptoms of bronchitis are much the same as those of asthma. He intends to testify as to all Plaintiffs except Jamieon Akins, that, based on their medical records and depositions, it is more likely than not that they have asthma. Relying on Drs. Clark and Cormier's reports, Dr. Goldstein will further assist the jury by opining that it is more likely than not that the mill emissions caused or exacerbated Plaintiffs' asthma. Plaintiffs argue that IP relies only on Dr. Goldstein's testimony about the Plaintiffs' case in general, but Dr. Goldstein also testified in his deposition about each individual Plaintiff and opined to more than possibilities. Finally, Plaintiffs explain that Dr. Goldstein testified that he could not give a "specific diagnosis" as to each Plaintiff, as he understands that term, because he did not personally examine Plaintiffs. However, he clearly provided appropriate medical testimony as to each Plaintiff in his deposition.

In its reply memorandum, IP discredits Plaintiffs' arguments about Dr. Goldstein's "specific diagnosis" testimony because he only concluded that Plaintiffs' "doctors have diagnosed them with some respiratory problem that within a reasonable degree of medical certainty could be asthma and they were treated in a manner that would be consistent with asthma." [Doc. No. 151, Exh. 21, p. 17:12-25]. IP also reiterates that Plaintiffs cannot opine that IP's emissions caused the onset of Plaintiffs' alleged asthma or exacerbated existing respiratory problems.

7

Having reviewed and considered the parties' arguments and the evidence in the record, the Court finds that Dr. Goldstein's testimony is sufficiently relevant to be admissible at trial on diagnosis and causation. Although Dr. Goldstein did not personally examine the Plaintiffs, he is an experienced, board-certified, practicing pulmonologist[5] who, as is common in the field, reviewed the medical records of each Plaintiff for whom he offered an opinion. Although he offered testimony in general terms about Plaintiffs as a group, he clearly opined in his report that Plaintiffs "do have asthma and/or respiratory problems," that the information he reviewed "would support a causal relationship between exposure to dusts and chemicals released by [IP] . . . and the development and/or exacerbations of asthma in all cases except for Jamieon Akins," and that "to a reasonable degree of medical certainty, . . . the toxic chemicals and particulater [sic] matter, as set forth by Dr. Clark and Corm[i]er either caused and/or contributed to the above patients['] respiratory medical conditions." [Doc. No. 151, Exh. 8]. Moreover, at his deposition, Dr. Goldstein provided more specific testimony as to each Plaintiff individually, expounding on the one-page report and his general statements. *See* [Doc. No. 169, Exh. 4]. He specifically testified that "[w]ithin a reasonable degree of medical certainty, the air pollution, the air quality is responsible for [Plaintiffs'] exacerbations for sure and within using the 51 percent, my personal feeling is yes, the air quality is what caused the asthma." [Doc. No. 151, Exh. 21, pp. 79-80]. Although, ideally, Dr. Goldstein would have excluded all 20 common causes of asthma, the Court cannot say that Dr. Goldstein's causation testimony is irrelevant or would not be helpful to the jury. His opinion is relevant to the issue of whether Plaintiffs suffered from a respiratory condition and whether Plaintiffs' respiratory conditions were caused by mill emissions. IP's concerns on relevance are more properly addressed

---

[5]Dr. Goldstein is certified by the American Board of Internal Medicine in internal medicine, but also took a "specific test for board certification in pulmonary disease." [Doc. No. 151, Exh. 21, p. 71:9-13].

on cross-examination. Thus, Dr. Goldstein's testimony will not be excluded on this basis.

### B. Dr. Goldstein's Methodology

IP next argues that Dr. Goldstein failed to use reliable scientific methodology to diagnose Plaintiffs and to show causation. First, IP makes an overlapping argument that Dr. Goldstein's testimony about Plaintiffs' alleged asthma is not only irrelevant, but unreliable, because he did not personally examine Plaintiffs, obtain their medical history, and give them a pulmonary function test, the recognized method of diagnosing asthma. Second, IP contends that Dr. Goldstein's methodology on causation is also flawed. Plaintiffs admit that Dr. Goldstein did not have Dr. Clark's exposure estimates when he issued his report and, thus, had no information concerning Plaintiffs' levels of exposure. Additionally, Dr. Goldstein failed to rule out other causes of Plaintiffs' asthma. Finally, IP argues that Dr. Goldstein failed to determine whether there was any temporal relationship between exacerbation of Plaintiffs' asthma and exposures to mill emissions.

In their opposition, Plaintiffs contend that Dr. Goldstein's methodology is reliable with regard to diagnoses and causation. Plaintiffs argue that the standard method of diagnosing a patient with asthma is for a patient with no previous diagnosis. Consistent with Rule 703, Dr. Goldstein, like other doctors, reasonably relied on medical records to form an opinion.[6] To the extent that Plaintiffs did not have a previous diagnosis of asthma, but had been diagnosed with another

---

[6]Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular fiel+d would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

respiratory condition, such as bronchitis, Dr. Goldstein relied on the listed symptoms in their medical records to opine that they actually did have asthma. Plaintiffs dispute IP's causation arguments as well. Plaintiffs admit that counsel inadvertently failed to provide Dr. Goldstein with Dr. Clark's estimates of the one-hour peak concentrations of chemicals of concerns from the mill emissions, so that he did not review these findings prior to issuing his report. However, he has since reviewed Dr. Clark's findings, which support his conclusions. He also testified that he had ruled out smoking, diesel fumes, perfumes, and other possible causes of asthma because they were not mentioned in Plaintiffs' medical records. In its reply memorandum, IP reiterates its earlier arguments. IP also points out that Dr. Goldstein could not rule out over 20 common causes of asthma because he did not take a medical history from Plaintiffs and, instead, assumed that a possible alternative cause would be listed in their medical records. Yet, as Dr. Goldstein admitted in his deposition, mill emissions were not listed in those medical records either. Finally, IP points out that Plaintiffs offered no argument on the lack of evidence of a temporal relationship between exacerbation of Plaintiffs' asthma and exposures to mill emissions.

Having reviewed and considered the parties' arguments and the evidence in the record, the Court finds that Dr. Goldstein's testimony is sufficiently reliable to be admissible at trial. First, the Courts finds that Dr. Goldstein's reliance on Plaintiffs' medical records, depositions, and deposition summaries and Drs. Clark's and Cormier's reports is "ground[ed] in the methods of procedures of science," *Daubert*, 509 U.S. at 590, and is, thus, reliable. As Dr. Goldstein testified, it is common (and consistent with Rule 703) for a party to present evidence through a physician or other expert who relies on the records prepared by another professional. *See Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994) (practicing, board-certified cardiologist with thirty years of experience could testify as to the standard of care owed to the plaintiff based on plaintiff's medical records, coroner's

records, and published materials); [Doc. No. 169, Exh. 4, p. 203:5-12]. Although there is a standard procedure for initially diagnosing asthma, many Plaintiffs already had an asthma diagnosis. In part, Dr. Goldstein was tasked with reviewing the cited documents to offer his professional opinion as to whether it was more likely or not that Plaintiffs had been properly diagnosed with asthma. If a Plaintiff had been diagnosed with another respiratory condition, such as bronchitis, Dr. Goldstein considered whether it was more likely than not asthma was the proper diagnosis based on that particular Plaintiff's symptoms. Dr. Goldstein's failure to examine or obtain medical histories directly from Plaintiffs supports an attack on cross examination, but does not mandate exclusion of his testimony.

Finally, the Court finds that Dr. Goldstein's testimony on causation is sufficiently reliable to be admissible under *Daubert*. Dr. Goldstein properly considered Plaintiffs' medical histories, depositions, and deposition summaries to exclude a number of causes, such as smoking and diesel fumes, but found no reason other than the mill emissions for Plaintiffs' asthma or respiratory conditions. The Court cannot say that it was necessary for admission of his testimony, even if it is possible, that Dr. Goldstein exclude all 20 common causes of asthma for each bout of asthma or related respiratory concerns suffered by each Plaintiff. Moreover, Dr. Goldstein, who is not a toxicologist or industrial hygienist, also properly relied on reports from other experts, Drs. Clark and Cormier, in reaching his causation opinion. Although Dr. Goldstein was not provided Dr. Clark's estimates of the peak one-hour concentrations prior to issuance of his report, but Dr. Goldstein did have other information from Drs. Clark and Cormier[7] on the mill emissions. He was then later provided Dr. Goldstein's report and found no basis to change his opinions. Finally, Dr. Goldstein's failure to examine the temporal relationship between exacerbation of Plaintiffs' asthma and

---

[7]Dr. Cormier also relied on Dr. Clark's findings for her report.

exposures to mill emissions is not fatal to his testimony. Dr. Goldstein testified that both long-term chronic exposures and episodic, acute exposures can cause patients to develop asthma symptoms. [Doc. No. 151, Exh. 21, p. 150]. As Dr. Goldstein admitted in his deposition, ideally he would have examined each Plaintiff and personally obtained information from him or her, but his causation methodology is sufficiently reliable based on his use of the medical records, Plaintiffs' depositions and deposition summaries, Drs. Clark and Cormier's reports, medical literature, and his own many years of experience. Accordingly, IP's Motion in Limine is denied on this basis as well.

**III.     Conclusion**

For the foregoing reasons, IP's Motion in Limine [Doc. No. 140] is DENIED.

MONROE, LOUISIANA, this 19th day of September, 2014.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE