UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

DONALD SADLER, ET AL.                          CIVIL ACTION NO. 09-1254

VERSUS                                         JUDGE ROBERT G. JAMES

INTERNATIONAL PAPER CO.                        MAG. JUDGE MARK L. HORNSBY

RULING

Pending before the Court is Defendant International Paper Co.'s ("IP") "Motion to Exclude the Report, Opinions, and Testimony of Dr. James J.J Clark" [Doc. No. 138].  Plaintiffs filed a memorandum in opposition to the motion. [Doc. No. 167].  IP filed a reply. [Doc. No. 189].

For the following reasons, IP's motion is GRANTED.

I.        **Procedural Background and Contested Opinion**

On July 28, 2009, Plaintiffs brought suit against IP, which formerly operated a paper mill in Bastrop, Louisiana ("the mill"), asserting that IP's alleged release of hazardous substances into the air caused or exacerbated certain of their health conditions.  Plaintiffs, who all lived, worked, and/or resided near the mill prior to its closure in 2008, have pending claims of negligence and private nuisance against IP.[1]

In support of their claims, Plaintiffs retained Dr. James "J.J." Clark, (" Dr. Clark"), who has a doctorate in environmental health sciences, to provide an expert opinion, "quantifying the exposures to hazardous and toxic air pollutants that plaintiffs received from the former [IP] . . .

---

[1]Plaintiffs originally brought claims of trespass, public nuisance, and for property damages, but on March 14, 2014, the Court granted IP's Motion for Summary Judgment and dismissed these claims. [Doc. No. 198].

plant." [Doc. No. 151, Exh. 6, p. 1].  On February 28, 2013, Dr. Clark issued his report, relying on

the air dispersion modeling performed by Plaintiffs' expert, William A. Williams, to opine as

follows:

    1.       Releases of chemicals from the IP Bastrop plant extended off site into the community;

    2.       It is my opinion that violations of air quality standards will create conditions in local environments that will adversely affect public health;

    3.       The chemicals released from the IP Bastrop Site into air included volatile organic compounds (VOCs), particulate matter, and criteria pollutants.  These compounds are known to have significant health effects from acute and chronic exposure.

    4.       It is my opinion that plaintiffs resided, attended school, attended church, worked and/or visited affected parts of the community adjacent to the plant, exposing them to the plant emissions; and

    5.       Exposure to criteria pollutants and VOCs is causally associated with the development of respiratory distress.

[Doc. No. 151, Exh. 6, pp. 1-2].

On September 9, 2013, IP filed seven motions *in limine* [Doc. Nos. 135-141], seeking to

exclude Plaintiffs' experts.

On December 2, 2013, Plaintiffs filed their memoranda in opposition to the pending motions

in limine.  *See* [Doc. Nos. 167-173].   On the same date, Plaintiffs filed a Motion to Hold Hearing

on Defendant's Expert Witness Exclusion Motions and a Motion to Modify Case Management Order

("Motion to Hold Hearing and Modify CMO") [Doc. No. 176].

On December 27, 2013, IP filed an opposition to Plaintiff's Motion to Hold Hearing and

Modify CMO [Doc. No. 183].  On December 30, 2013, IP filed reply memoranda in support of its

motions in limine [Doc. Nos. 186-192], as well as a Motion to Strike Plaintiffs' Expert Affidavits

and Supplemental Reports ("Motion to Strike") [Doc. No. 184].

On January 20, 2014, Plaintiffs filed a memorandum in opposition to IP's Motion to Strike

[Doc. No. 194].

On January 30, 2014, the Court issued a Ruling [Doc. No. 195] and Order [Doc. No. 196],

denying Plaintiffs' Motion to Hold Hearing and Modify CMO, but granting IP's Motion to Strike.[2]

The Court ruled as follows:

> In this case, it is clear that Plaintiffs have failed to comply with Rule 26 and the CMO. According to Plaintiffs' own arguments, they knowingly submitted an expert report from Dr. Clark that was based on permitted emissions, rather than the actual emissions of the Bastrop mill. Plaintiffs' expert, Mr. Williams, was already working on another model at the time that Dr. Clark submitted his first expert report, yet Plaintiffs failed to take any reasonable action to alert IP or this Court to their alleged need for additional time to review and analyze discovery. Plaintiffs compounded their knowing submission of an incomplete and/or inaccurate expert report because their other experts relied on Dr. Clark's February 28, 2013 opinion.
>
> Further, Plaintiffs failed to notify IP or this Court of any issue with its expert reports until May, 2013, three months later, when they provided IP with Dr. Clark's second report without Court approval. At that point, IP had already deposed some of Plaintiffs' experts and were to depose Dr. Clark within a few days. When IP raised its objections to Dr. Clark's so-called supplemental report, Plaintiffs' counsel indicated that they would present the issue to the Court, but, inexplicably, they did not. Instead, Plaintiffs went on to give IP a second report from Dr. Irby in June, 2013, four months after the deadline. Plaintiffs only presented this Court with affidavits from all their experts and filed the instant motion on December 2, 2013, nine months after the Rule 26 expert disclosures were due, after IP had filed motions *in limine* to exclude Plaintiffs' expert reports, and after Plaintiffs received an extension of time to respond to the pending motions in limine.
>
> Even if the Court found that IP failed to comply with its discovery obligations (which it does not), Plaintiffs ignored their own obligations under Rule 26 and the CMO. Plaintiffs had more than one option: they could have moved for an extension of the expert disclosure deadline, they could have filed a motion to compel or raised

---

[2]The Court noted in its Ruling that it would consider whether an evidentiary hearing was necessary for each *Daubert* motion, but denied a hearing at that time for the purposes sought by Plaintiffs. [Doc. No. 195, p. 14].

objections to the Court of IP's alleged failure to comply with reasonable discovery requests, or they could have notified IP at the time the first report was provided that they were in the process of preparing a second report using discovery from URS. . . Plaintiffs took none of these actions. As a result, IP's experts and attorneys prepared for depositions based on the initial reports, IP's attorneys took depositions of Plaintiffs' experts based on the initial reports, and IP reasonably filed extensive motions in limine.

 . . .

Finally, with regard to the affidavits filed on December 2, 2013, Plaintiffs have not offered an explanation to justify its filing of extensive affidavits nine months after the expert disclosures deadline. The Court has previously considered affidavits from experts in other cases which sought to respond to issues raised in a motion filed by an opposing party. However, the affidavits in this case do not seek merely to clarify the opinions of Plaintiffs' experts, but are extensive supplementation, elaboration, and revision of the opinions expressed in their reports.

[Doc. No. 195, pp. 11-13].

As a result of the Court's Ruling, the supplemental reports of Drs. Clark and Irby and the affidavits of all Plaintiffs' experts filed on December 2, 2013, were stricken from the record. Among the documents stricken from the record were Williams' affidavit and his untimely prepared Model #3 using IP's actual emissions, rather than its permitted emissions.

On March 24, 2014, the Court issued a Ruling and Judgment [Doc. Nos. 199 & 200] granting in part and denying in part IP's "Motion for Summary Judgment and Partial Summary Judgment on Certain Test Plaintiffs' Claims." The Court granted the motion as to all claims by Plaintiffs Jaunice Gorman, Roberta Anne Lambert, Emma Odom, and Robin Payton, and their claims were dismissed with prejudice. The Court granted the motion in part on Plaintiffs' personal injury claims for conditions other than asthma, chronic bronchitis, COPD, coughing, and sinusitis, limiting Plaintiffs to recovery for asthma, chronic bronchitis, COPD, coughing, sinusitis, and related symptoms. The Court also granted the motion for partial summary judgment in part on certain identified claims by

certain Plaintiffs, dismissing the claim by Plaintiff Jamieon Akins that his sinus infections were caused by the mill emissions, but preserving claims by other Plaintiffs.  Finally, the Court granted IP's motion in part on damages, dismissing Plaintiffs' claims for general damages, future medical expenses, and lost wages, but denying the motion as to past medical expenses.

On April 28, 2014, the Court issued a Ruling and Order [Doc. Nos. 201 & 202] granting in part and denying in part IP's Motion to Exclude the Report, Opinions, and Testimony of James N. Tarr, P.E. ("Tarr").  The Court granted the motion to exclude Tarr from rendering an opinion on "negative health impact[s]" and any special responsibility owed by IP.  The motion was otherwise denied, and Tarr will be permitted to offer opinion testimony at trial on fuel use and odor caused by IP's emissions.

On September 19, 2014, the Court issued a Ruling and Order [Doc. Nos. 203 & 204] denying IP's Motion to Exclude the Report, Opinions, and Testimony of Dr. Allan R. Goldstein.  In its Ruling, however, the Court noted that Dr. Goldstein relied on the testimony of Dr. Clark and that the Court would consider the Motion to Exclude Dr. Clark's opinions separately.

On September 25, 2014, the Court issued a Ruling and Order [Doc. Nos. 205 & 206] granting IP's Motion  to Exclude the Report, Opinions, and Testimony of Williams.  In its Ruling, the Court found that Williams was not qualified to perform air dispersion modeling work and that, additionally, his opinions were not relevant and reliable when he used permitted emissions as the basis of his modeling work.

The Court now turns to the instant motion.  As an initial matter, the Court notes that a number of Plaintiffs' arguments in its opposition memoranda to the pending motions in limine are based on stricken supplemental affidavits and reports.  The Court has considered only those arguments currently supported by record documents.

## II.    Law and Analysis

Under Federal Rule of Evidence 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  Under Rule 702, a district court has considerable discretion in deciding whether to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-9 (1997) (reviewing district court's determination under abuse of discretion standard).

Reliability and relevance, under Rule 702, are the hallmarks of admissible testimony from an expert witness. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993); *In re MBS Mgmt. Servs., Inc.*, 690 F.3d 352, 357 (5th Cir. 2012) ("[T]he trial judge serves as a gatekeeper to ensure the reliability and relevance of expert testimony.").  Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[02], p. 702-18 (1988)).  In determining reliability, "the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that

reasoning or methodology can properly be applied to the facts in issue." 509 U.S. at 589. "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho*, 526 U.S. at 152)). However, the focus of reliability "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595.

"[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. . . . " *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotations and citations omitted). "It is the role of the adversarial system, not the court, to highlight weak evidence[.]" *Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

IP attacks Dr. Clark's opinions on exposure and causation. IP argues that Dr. Clark's exposure opinions are unreliable for three reasons: they are based on admittedly inaccurate modeling of hypothetical, maximum emissions; he relied on modeling results he was told by Williams to exclude; and he improperly relied on Williams' flawed modeling. IP also argues that Dr. Clark's general and specific causation opinions are unreliable.

Plaintiffs oppose IP's motion. With regard to exposure, they respond, first, that Dr. Clark properly relied on facts and data provided by Williams in his air dispersion modeling. Even if Williams were excluded from testifying because of his lack of qualifications, Plaintiffs argue that

Dr. Clark could still testify because he independently reviewed and validated the input and output files Williams used for his air dispersion modeling. They admit, however, that "in reaching his February 28, 2013 opinions," Dr. Clark "considered only an exposure model--Model Sets #1 and 2-- based on 'permitted emissions' at the plant rather than actual emissions." [Doc. No. 167, p. 15]. Plaintiffs go on to argue Dr. Clark's May 3, 2013 supplemental report and deposition opinions are based on the actual emissions contained in air dispersion Model Set #3, and, thus, any reliance on permitted emissions has been resolved. Plaintiffs also contend that Dr. Clark's general and specific causation opinions are properly admissible.

Consistent with its previous rulings, the Court finds that Dr. Clark's exposure opnions are unreliable. As part of its January 30, 2014 Ruling [Doc. No. 195], granting IP's Motion to Strike, the Court ordered that Williams' air dispersion Model #3, Dr. Clark's supplemental report, and both of their affidavits be stricken. Thus, Plaintiffs can rely only on Dr. Clark's report, opinions, and testimony based on IP's permitted emissions, rather than its actual emissions. Dr. Clark's reliance on the permitted emissions renders his opinion, testimony, and report both unreliable.

It is undisputed that the source emission output data Williams used for the first two models, the same data relied on by Dr. Clark, were merely projections made by IP of the maximum, permitted emissions it might make. The data did not show the amounts of chemicals or substances actually released into the air. In other words, Williams and Dr. Clark (to the extent that he independently reviewed the data) relied on the maximum emission levels allowed by IP's regulatory permits. Yet, it is now undisputed that the actual emissions were lower than the permitted emissions. Based on this evidence, Dr. Clark's exposure testimony simply is not reliable, and he will not be permitted to

offer his opinions at trial.[3]

### III.    Conclusion

For the foregoing reasons, IP's Motion in Limine [Doc. No. 138] is GRANTED, and Dr.

Clark is excluded from offering his report, opinions, or testimony at trial.

MONROE, LOUISIANA, this 30th day of September, 2014.

_____
**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

---

[3]Since Dr. Clark's opinions on causation rely on his conclusions as to exposure, the Court need not reach IP's remaining causation arguments.