UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DONALD SADLER, ET AL.** | **CIVIL ACTION NO. 09-1254** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **INTERNATIONAL PAPER CO.** | **MAG. JUDGE MARK L. HORNSBY** |

**RULING**

Pending before the Court is Defendant International Paper Co.'s ("IP") "Motion to Exclude the Report, Opinions, and Testimony of Dr. Stephania A. Cormier" [Doc. No. 139]. Plaintiffs filed a memorandum in opposition to the motion. [Doc. No. 168]. IP filed a reply. [Doc. No. 190].

For the following reasons, IP's motion is GRANTED.

**I.    Procedural Background and Contested Opinion**

On July 28, 2009, Plaintiffs brought suit against IP, which formerly operated a paper mill in Bastrop, Louisiana ("the mill"), asserting that IP's alleged release of hazardous substances into the air caused or exacerbated certain of their health conditions. Plaintiffs, who all lived, worked, and/or resided near the mill prior to its closure in 2008, have pending claims of negligence and private nuisance against IP.[1]

In support of their claims, Plaintiffs retained Dr. Stephania A. Cormier ("Cormier"), who has a doctorate in biochemistry and molecular biology and is currently a professor of pediatrics at

---

[1] Plaintiffs originally brought claims of trespass, public nuisance, and for property damages, but on March 14, 2014, the Court granted IP's Motion for Summary Judgment and dismissed these claims. [Doc. No. 198].

University of Tennessee Health Sciences Center.[2] On February 20, 2013, Dr. Cormier offered a general causation opinion for seven test Plaintiffs who were minors when the lawsuit was filed, using "exposure assessments calculated by [Dr. James] Clark . . . and relevant literature available . . . ." [Doc. No. 151, Exh. 7, p. 1], although Dr. Cormier admittedly did not have Dr. Clark's report at the time. Dr. Cormier opined as follows:

1. The [seven minor test] plaintiffs were repeatedly exposed to hazardous and toxic air pollutants.

2. The hazardous and toxic air pollutants to which the plaintiffs were exposed elicit adverse effects on the respiratory system.

    a. Acute high level exposures, in otherwise healthy individuals, can induce a range of symptoms from mild respiratory irritation to severe reactive airways disease such as asthma.

    b. Repeated and/or chronic low or high level exposures . . . induces structural damage to the lungs, resulting in the development of chronic respiratory diseases such as asthma, pulmonary fibrosis, chronic obstructive pulmonary disease (COPD), and cancer.

3. Certain populations are more susceptible to the respiratory effects of inhaled toxicants including infants and small children.

*Id.* at pp. 1-2.

On September 9, 2013, IP filed seven motions *in limine* [Doc. Nos. 135-141], seeking to exclude Plaintiffs' experts.

On December 2, 2013, Plaintiffs filed their memoranda in opposition to the pending motions *in limine*. *See* [Doc. Nos. 167-173]. On the same date, Plaintiffs filed a Motion to Hold Hearing on Defendant's Expert Witness Exclusion Motions and a Motion to Modify Case Management Order ("Motion to Hold Hearing and Modify CMO") [Doc. No. 176].

---

[2] At the time she gave her opinion, Dr. Cormier was an associate professor at Louisiana State University.

On December 27, 2013, IP filed an opposition to Plaintiff's Motion to Hold Hearing and Modify CMO [Doc. No. 183]. On December 30, 2013, IP filed reply memoranda in support of its motions in limine [Doc. Nos. 186-192], as well as a Motion to Strike Plaintiffs' Expert Affidavits and Supplemental Reports ("Motion to Strike") [Doc. No. 184].

On January 20, 2014, Plaintiffs filed a memorandum in opposition to IP's Motion to Strike [Doc. No. 194].

On January 30, 2014, the Court issued a Ruling [Doc. No. 195] and Order [Doc. No. 196], denying Plaintiffs' Motion to Hold Hearing and Modify CMO, but granting IP's Motion to Strike.[3] The Court ruled as follows:

> In this case, it is clear that Plaintiffs have failed to comply with Rule 26 and the CMO. According to Plaintiffs' own arguments, they knowingly submitted an expert report from Dr. [James] Clark that was based on permitted emissions, rather than the actual emissions of the Bastrop mill. Plaintiffs' expert, Mr. [William A.] Williams, was already working on another model at the time that Dr. Clark submitted his first expert report, yet Plaintiffs failed to take any reasonable action to alert IP or this Court to their alleged need for additional time to review and analyze discovery. Plaintiffs compounded their knowing submission of an incomplete and/or inaccurate expert report because their other experts relied on Dr. Clark's February 28, 2013 opinion.
>
> Further, Plaintiffs failed to notify IP or this Court of any issue with its expert reports until May, 2013, three months later, when they provided IP with Dr. Clark's second report without Court approval. At that point, IP had already deposed some of Plaintiffs' experts and were to depose Dr. Clark within a few days. When IP raised its objections to Dr. Clark's so-called supplemental report, Plaintiffs' counsel indicated that they would present the issue to the Court, but, inexplicably, they did not. Instead, Plaintiffs went on to give IP a second report from Dr. Irby in June, 2013, four months after the deadline. Plaintiffs only presented this Court with affidavits from all their experts and filed the instant motion on December 2, 2013, nine months after the Rule 26 expert disclosures were due, after IP had filed motions *in limine* to exclude Plaintiffs' expert reports, and after Plaintiffs received an

---

[3] The Court noted in its Ruling that it would consider whether an evidentiary hearing was necessary for each *Daubert* motion, but denied a hearing at that time for the purposes sought by Plaintiffs. [Doc. No. 195, p. 14].

> extension of time to respond to the pending motions in limine.
>
> Even if the Court found that IP failed to comply with its discovery obligations (which it does not), Plaintiffs ignored their own obligations under Rule 26 and the CMO. Plaintiffs had more than one option: they could have moved for an extension of the expert disclosure deadline, they could have filed a motion to compel or raised objections to the Court of IP's alleged failure to comply with reasonable discovery requests, or they could have notified IP at the time the first report was provided that they were in the process of preparing a second report using discovery from URS. . . Plaintiffs took none of these actions. As a result, IP's experts and attorneys prepared for depositions based on the initial reports, IP's attorneys took depositions of Plaintiffs' experts based on the initial reports, and IP reasonably filed extensive motions in limine.
>
> . . .
>
> Finally, with regard to the affidavits filed on December 2, 2013, Plaintiffs have not offered an explanation to justify its filing of extensive affidavits nine months after the expert disclosures deadline. The Court has previously considered affidavits from experts in other cases which sought to respond to issues raised in a motion filed by an opposing party. However, the affidavits in this case do not seek merely to clarify the opinions of Plaintiffs' experts, but are extensive supplementation, elaboration, and revision of the opinions expressed in their reports.

[Doc. No. 195, pp. 11-13].

As a result of the Court's Ruling, the supplemental reports of Drs. Clark and Irby and the affidavits of all Plaintiffs' experts filed on December 2, 2013, were stricken from the record. Among the documents stricken from the record were Williams' affidavit and his untimely prepared air dispersion Model #3 using IP's actual emissions, rather than its permitted emissions.

On March 24, 2014, the Court issued a Ruling and Judgment [Doc. Nos. 199 & 200] granting in part and denying in part IP's "Motion for Summary Judgment and Partial Summary Judgment on Certain Test Plaintiffs' Claims." The Court granted the motion as to all claims by Plaintiffs Jaunice Gorman, Roberta Anne Lambert, Emma Odom, and Robin Payton, and their claims were dismissed with prejudice. The Court granted the motion in part on Plaintiffs' personal injury claims for

conditions other than asthma, chronic bronchitis, COPD, coughing, and sinusitis, limiting Plaintiffs to recovery for asthma, chronic bronchitis, COPD, coughing, sinusitis, and related symptoms. The Court also granted the motion for partial summary judgment in part on certain identified claims by certain Plaintiffs, dismissing the claim by Plaintiff Jamieon Akins that his sinus infections were caused by the mill emissions, but preserving claims by other Plaintiffs. Finally, the Court granted IP's motion in part on damages, dismissing Plaintiffs' claims for general damages, future medical expenses, and lost wages, but denying the motion as to past medical expenses.

On April 28, 2014, the Court issued a Ruling and Order [Doc. Nos. 201 & 202] granting in part and denying in part IP's Motion to Exclude the Report, Opinions, and Testimony of James N. Tarr, P.E. ("Tarr"). The Court granted the motion to exclude Tarr from rendering an opinion on "negative health impact[s]" and any special responsibility owed by IP. The motion was otherwise denied, and Tarr will be permitted to offer opinion testimony at trial on fuel use and odor caused by IP's emissions.

On September 19, 2014, the Court issued a Ruling and Order [Doc. Nos. 203 & 204] denying IP's Motion to Exclude the Report, Opinions, and Testimony of Dr. Allan R. Goldstein. In its Ruling, however, the Court noted that Dr. Goldstein relied on the testimony of Drs. Clark and Cormier and that the Court would consider the Motion to Exclude Drs. Clark's and Cormier's opinions separately.

On September 25, 2014, the Court issued a Ruling and Order [Doc. Nos. 205 & 206] granting IP's Motion to Exclude the Report, Opinions, and Testimony of Williams. In its Ruling, the Court found that Williams was not qualified to perform air dispersion modeling work and that, additionally, his opinions were not relevant and reliable when he used permitted emissions as the basis of his modeling work.

On September 30, 2014, the court issued a Ruling and Order [Doc. Nos. 207 & 208] granting IP's Motion to Exclude the Report, Opinions, and Testimony of Dr. Clark. The Court found that Dr. Clark's opinion on exposure was unreliable when he used permitted emissions to support his conclusions.

The Court now turns to the instant motion. As an initial matter, the Court notes that a number of Plaintiffs' arguments in its opposition memoranda to the pending motions *in limine* are based on stricken supplemental affidavits and reports. The Court has considered only those arguments currently supported by record documents.

## II. Law and Analysis

Under Federal Rule of Evidence 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under Rule 702, a district court has considerable discretion in deciding whether to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-9 (1997) (reviewing district court's determination under abuse of discretion standard).

Reliability and relevance, under Rule 702, are the hallmarks of admissible testimony from an expert witness. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993); *In re MBS Mgmt. Servs., Inc.*, 690 F.3d 352, 357 (5th Cir. 2012) ("[T]he trial judge serves as a gatekeeper to

ensure the reliability and relevance of expert testimony."). Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[02], p. 702-18 (1988)). In determining reliability, "the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can properly be applied to the facts in issue." 509 U.S. at 589. "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho*, 526 U.S. at 152)). However, the focus of reliability "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595.

"[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. . . . " *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotations and citations omitted). "It is the role of the adversarial system, not the court, to highlight weak evidence[.]" *Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

It is clear that Dr. Cormier is eminently qualified in her field, and IP does not attack her qualifications. Instead, IP attacks Dr. Cormier's opinions, contending that they are not based on sufficient facts or a scientifically reliable methodology; that they would not assist the trier of fact because Dr. Cormier did not properly consider the specific respiratory conditions at issue; and that her report did not comply with the requirement of Federal Rule of Civil Procedure 26. Among other challenges to her methodology, IP argues that Dr. Cormier has no basis to offer an opinion on exposure and that she relied on Dr. Clark's draft materials.

Plaintiffs respond that Dr. Cormier properly used the standard methodology by relying on Dr. Clark's report to determine Plaintiffs' exposure levels and then looking to appropriate literature from the Environmental Protection Agency ("EPA") and others to form an opinion as to the exposure levels necessary to induce respiratory conditions in children or adults who were exposed as children.[4] Plaintiffs argue further that Dr. Cormier's opinions on causation will assist the jury because she identified, in her affidavit, the chemicals of concern from Dr. Clark and used his data to identify the acute and chronic exposure levels and the times of the acute exposure. Finally, Plaintiffs argue that Rule 26 provides no basis for Dr. Cormier's exclusion because she produced Dr. Clark's draft materials at her deposition.

While some of IP's arguments might be relegated to a challenge on cross-examination, the Court finds that Dr. Cormier's causation opinion is improperly based on Dr. Clark's exposure findings prior to the issuance of his February 28, 2013 report. Neither his draft report nor his later February 28, 2013 report contained data on actual emissions, but relied on Williams' air dispersion

---

[4]The Court notes that Plaintiffs support their argument with Dr. Cormier's affidavit, which the Court has excluded. *See* [Doc. No. 168, pp. 8-9 (citing stricken Exhibit 4)]. While Plaintiffs cannot rely on the affidavit, the Court finds it appropriate to recount Plaintiffs' arguments.

modeling using permitted emissions. The Court has already excluded both Williams' air dispersion modeling and Dr. Clark's opinions, report, and testimony. Further, the Court has excluded Dr. Cormier's supplemental affidavit relying on Dr. Clark's later findings. Thus, Dr. Cormier does not have a proper foundation to establish exposure levels and cannot be permitted to offer her causation opinions, testimony, or report, no matter how qualified she may be. Her opinions are not reliable and relevant and must be excluded. IP's motion is GRANTED.

**III. Conclusion**

For the foregoing reasons, IP's Motion in Limine [Doc. No. 139] is GRANTED, and Dr. Cormier is excluded from offering her report, opinions, or testimony at trial.

MONROE, LOUISIANA, this 30th day of September, 2014.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE