UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DONALD SADLER, ET AL.** | **CIVIL ACTION NO. 09-1254** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **INTERNATIONAL PAPER CO.** | **MAG. JUDGE MARK L. HORNSBY** |

## RULING

Pending before the Court is Defendant International Paper Co.'s ("IP") "Motion to Exclude the Report, Opinions, and Testimony of Dr. Marshall Scott Irby" [Doc. No. 141]. Plaintiffs filed a memorandum in opposition to the motion. [Doc. No. 170]. IP filed a reply. [Doc. No. 192].

For the following reasons, IP's motion is GRANTED.

**I.     Procedural Background and Contested Opinion**

On July 28, 2009, Plaintiffs brought suit against IP, which formerly operated a paper mill in Bastrop, Louisiana ("the mill"), asserting that IP's alleged release of hazardous substances into the air caused or exacerbated certain of their health conditions. Plaintiffs, who all lived, worked, and/or resided near the mill prior to its closure in 2008, have pending claims of negligence and private nuisance against IP.[1]

In support of their claims, Plaintiffs retained Dr. Marshall Scott Irby ("Irby"), a pulmonologist in Monroe, Louisiana. Prior to issuing his report, Dr. Irby did not examine or speak to Plaintiffs or review their medical records directly. Instead, Plaintiffs' counsel provided him with

---

[1] Plaintiffs originally brought claims of trespass, public nuisance, and for property damages, but on March 14, 2014, the Court granted IP's Motion for Summary Judgment and dismissed these claims. [Doc. No. 198].

the February 12, 2013 expert report from pulmonologist Dr. Allan R. Goldstein and January 31, 2013 draft report from Dr. James J.J. Clark, which included 2006 USEPA RSEI Risk Scores and Hazard Scores, and summaries of ten of the Plaintiffs' medical records. After spending approximately eight hours of review, in February 2013, Dr. Irby issued his one-page report, opining as follows:

> After reviewing the Clark & Associates report on the IP Bastrop Paper Mill plant emissions including the 2006 USEPA RSEI Risk Scores and Hazard Scores, the Dr. Goldstein report, and the greater than 10 plaintiff Medical Records Summaries, it is my opinion that there is very likely a causal effect between those emissions and their respiratory problems, including, but not limited to, asthma plus or minus COPD, chronic bronchitis and sinus problems.

[Doc. No. 151, Exh. 9].

Between March 26 and May 2, 2013, Dr. Irby performed independent medical examinations ("IMEs") of seven Plaintiffs: Jamieon Akins, Donald Sadler, Jaunice Gorman, Richard Russell, Roberta Lambert,[2] Scotty Sadler, and Wayne Burns, to allegedly support his earlier expert report. Dr. Irby did not conduct medical examinations of the remaining Plaintiffs. Plaintiffs did not provide Dr. Irby's independent medical examinations to IP until June 3, 2013. *See* [Doc. No. 184, p. 2].

On September 9, 2013, IP filed seven motions *in limine* [Doc. Nos. 135-141], seeking to exclude Plaintiffs' experts.

On November 26, 2013, Dr. Irby executed an affidavit to support Plaintiffs' opposition memorandum to the instant motion. The opposition memoranda to all the then-pending motions in limine were filed on December 2, 2013. *See* [Doc. Nos. 167-173]. On the same date, Plaintiffs filed a Motion to Hold Hearing on Defendant's Expert Witness Exclusion Motions and a Motion to Modify Case Management Order ("Motion to Hold Hearing and Modify CMO") [Doc. No. 176].

On December 27, 2013, IP filed an opposition to Plaintiff's Motion to Hold Hearing and

---

[2]As discussed below, Gorman and Lambert have since been dismissed.

2

Modify CMO [Doc. No. 183]. On December 30, 2013, IP filed reply memoranda in support of its motions in limine [Doc. Nos. 186-192], as well as a Motion to Strike Plaintiffs' Expert Affidavits and Supplemental Reports ("Motion to Strike") [Doc. No. 184].

On January 20, 2014, Plaintiffs filed a memorandum in opposition to IP's Motion to Strike [Doc. No. 194].

On January 30, 2014, the Court issued a Ruling [Doc. No. 195] and Order [Doc. No. 196], denying Plaintiffs' Motion to Hold Hearing and Modify CMO, but granting IP's Motion to Strike.[3] The Court ruled as follows:

> In this case, it is clear that Plaintiffs have failed to comply with Rule 26 and the CMO. According to Plaintiffs' own arguments, they knowingly submitted an expert report from Dr. [James] Clark that was based on permitted emissions, rather than the actual emissions of the Bastrop mill. Plaintiffs' expert, Mr. [William A.] Williams, was already working on another model at the time that Dr. Clark submitted his first expert report, yet Plaintiffs failed to take any reasonable action to alert IP or this Court to their alleged need for additional time to review and analyze discovery. Plaintiffs compounded their knowing submission of an incomplete and/or inaccurate expert report because their other experts relied on Dr. Clark's February 28, 2013 opinion.
>
> Further, Plaintiffs failed to notify IP or this Court of any issue with its expert reports until May, 2013, three months later, when they provided IP with Dr. Clark's second report without Court approval. At that point, IP had already deposed some of Plaintiffs' experts and were to depose Dr. Clark within a few days. When IP raised its objections to Dr. Clark's so-called supplemental report, Plaintiffs' counsel indicated that they would present the issue to the Court, but, inexplicably, they did not. Instead, Plaintiffs went on to give IP a second report from Dr. Irby in June, 2013, four months after the deadline.[4] Plaintiffs only presented this Court with affidavits from all their experts and filed the instant motion on December 2, 2013, nine months after the Rule 26 expert disclosures were due, after IP had filed motions

---

[3]The Court noted in its Ruling that it would consider whether an evidentiary hearing was necessary for each *Daubert* motion, but denied a hearing at that time for the purposes sought by Plaintiffs. [Doc. No. 195, p. 14].

[4]To clarify, Dr. Irby's "second report" was actually the IMEs of the seven identified Plaintiffs.

3

*in limine* to exclude Plaintiffs' expert reports, and after Plaintiffs received an extension of time to respond to the pending motions in limine.

> Even if the Court found that IP failed to comply with its discovery obligations (which it does not), Plaintiffs ignored their own obligations under Rule 26 and the CMO. Plaintiffs had more than one option: they could have moved for an extension of the expert disclosure deadline, they could have filed a motion to compel or raised objections to the Court of IP's alleged failure to comply with reasonable discovery requests, or they could have notified IP at the time the first report was provided that they were in the process of preparing a second report using discovery from URS. . . Plaintiffs took none of these actions. As a result, IP's experts and attorneys prepared for depositions based on the initial reports, IP's attorneys took depositions of Plaintiffs' experts based on the initial reports, and IP reasonably filed extensive motions in limine.
>
> . . .
>
> Finally, with regard to the affidavits filed on December 2, 2013, Plaintiffs have not offered an explanation to justify [their] filing of extensive affidavits nine months after the expert disclosures deadline. The Court has previously considered affidavits from experts in other cases which sought to respond to issues raised in a motion filed by an opposing party. However, the affidavits in this case do not seek merely to clarify the opinions of Plaintiffs' experts, but are extensive supplementation, elaboration, and revision of the opinions expressed in their reports.

[Doc. No. 195, pp. 11-13].

As a result of the Court's Ruling, Dr. Clark's supplemental reports, Dr. Irby's supplemental IMEs, and the affidavits of all Plaintiffs' experts filed on December 2, 2013, were stricken from the record. The stricken documents included Dr. Irby's affidavit, Williams' affidavit, and Williams' untimely prepared air dispersion Model #3 using IP's actual emissions, rather than its permitted emissions.

On March 24, 2014, the Court issued a Ruling and Judgment [Doc. Nos. 199 & 200] granting in part and denying in part IP's "Motion for Summary Judgment and Partial Summary Judgment on Certain Test Plaintiffs' Claims." The Court granted the motion as to all claims by Plaintiffs Jaunice Gorman, Roberta Anne Lambert, Emma Odom, and Robin Payton, and their claims were dismissed

with prejudice. The Court granted the motion in part on Plaintiffs' personal injury claims for conditions other than asthma, chronic bronchitis, COPD, coughing, and sinusitis, limiting Plaintiffs to recovery for asthma, chronic bronchitis, COPD, coughing, sinusitis, and related symptoms. The Court also granted the motion for partial summary judgment in part on certain identified claims by certain Plaintiffs, dismissing the claim by Plaintiff Jamieon Akins that his sinus infections were caused by the mill emissions, but preserving claims by other Plaintiffs. Finally, the Court granted IP's motion in part on damages, dismissing Plaintiffs' claims for general damages, future medical expenses, and lost wages, but denying the motion as to past medical expenses.

On April 28, 2014, the Court issued a Ruling and Order [Doc. Nos. 201 & 202] granting in part and denying in part IP's Motion to Exclude the Report, Opinions, and Testimony of James N. Tarr, P.E. ("Tarr"). The Court granted the motion to exclude Tarr from rendering an opinion on "negative health impact[s]" and any special responsibility owed by IP. The motion was otherwise denied, and Tarr will be permitted to offer opinion testimony at trial on fuel use and odor caused by IP's emissions.

On September 19, 2014, the Court issued a Ruling and Order [Doc. Nos. 203 & 204] denying IP's Motion to Exclude the Report, Opinions, and Testimony of Dr. Allan R. Goldstein. In its Ruling, however, the Court noted that Dr. Goldstein relied on the testimony of Drs. Clark and Cormier and that the Court would consider the Motion to Exclude Drs. Clark's and Cormier's opinions separately.

On September 25, 2014, the Court issued a Ruling and Order [Doc. Nos. 205 & 206] granting IP's Motion to Exclude the Report, Opinions, and Testimony of Williams. In its Ruling, the Court found that Williams was not qualified to perform air dispersion modeling work and that, additionally, his opinions were not relevant and reliable when he used permitted emissions as the

basis of his modeling work.

On September 30, 2014, the Court issued a Ruling and Order [Doc. Nos. 207 & 208] granting IP's Motion to Exclude the Report, Opinions, and Testimony of Dr. Clark. The Court found that Dr. Clark's opinion on exposure was unreliable when he used permitted emissions to support his conclusions.

The same day, the Court also issued a Ruling and Order [Doc. Nos. 209 & 210] granting IP's Motion to Exclude the Report, Opinions, and Testimony of Dr. Stephania A. Cormier. Dr. Cormier relied on data and information provided by Dr. Clark (and thus Williams).

The Court now turns to the instant motion.

## II. Law and Analysis

Under Federal Rule of Evidence 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under Rule 702, a district court has considerable discretion in deciding whether to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-9 (1997) (reviewing district court's determination under abuse of discretion standard).

Reliability and relevance, under Rule 702, are the hallmarks of admissible testimony from an expert witness. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993); *In re MBS*

*Mgmt. Servs., Inc.*, 690 F.3d 352, 357 (5th Cir. 2012) ("[T]he trial judge serves as a gatekeeper to ensure the reliability and relevance of expert testimony."). Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[02], p. 702-18 (1988)). In determining reliability, "the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can properly be applied to the facts in issue." 509 U.S. at 589. "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho*, 526 U.S. at 152)). However, the focus of reliability "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595.

"[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. . . . " *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotations and citations omitted). "It is the role of the adversarial system, not the court, to highlight weak evidence[.]" *Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596

(citation omitted).

IP does not attack Dr. Irby's qualifications as a pulmonologist. Rather, IP attacks the bases for his opinion and his attempt to support his earlier report with late-performed IMEs and preparation of an untimely affidavit.

Plaintiffs respond that Dr. Irby properly opined as to the identified Plaintiffs' medical conditions and causation. With regard to their medical conditions, Plaintiffs argue that Dr. Irby could properly form an opinion without physically examining them when he was presented with Plaintiffs' complete, accurate medical summaries. As to causation, Plaintiffs argue that Dr. Irby properly relied on Dr. Clark's general causation opinions and the EPA's RSEI[5] scores for his specific causation opinion as to the Plaintiffs. He also properly ruled alternative causes of the adult Plaintiffs' respiratory conditions and, on later review, did the same with the minor Plaintiffs. Finally, Plaintiffs argue that Dr. Irby was provided with Dr. Clark's May 3, 2013 supplemental opinions which measured the concentrations of mill emissions to which Plaintiffs were allegedly exposed.

Having reviewed the parties' arguments and the remaining record evidence, the Court finds that IP's motion must be GRANTED. It is undisputed that at the time he issued his expert opinion Dr. Irby had only Dr. Clark's draft report which relied on the permitted emissions to determine Plaintiffs' exposure and that he had not reviewed Plaintiffs' medical records. The Court has now excluded Dr. Clark's opinions, testimony, and report, as well as Williams' air dispersion modeling

---

[5]"RSEI" is an acronym for risk-screening environmental indicators. http://www.epa.gov/oppt/rsei/. According to IP's expert, the "RSEI 'is a computer-based screening tool developed by EPA that analyzes risk factors to put Toxic Release Inventory (TRI) release data into a chronic health context' (EPA 2012)." [Doc. No. 141, Exh. 4, McClellan Aff. Ex. A at 7 (attaching Dr. McClellan's expert report) (quoting U.S. Environmental Protection Agency (2012) "How to Use—and Not Use—RSEI")].

work, so that Dr. Irby has no underlying basis for his causation opinion. Further, unlike Dr. Goldstein, prior to issuance of his one-page report, Dr. Irby had not been provided Plaintiffs' medical records or their depositions. He relied solely on medical summaries provided by counsel. The Court has already rejected the late-performed IMEs as an improper method of attempting to correct the deficiencies of Dr. Irby's opinions. Without the IMEs, the later affidavits, and Dr. Clark's supplemental reports to support Dr. Irby's opinions, the Court is left with a pulmonologist who had no evidence of the identified Plaintiffs' exposure sources or levels and who spent 8 hours reviewing counsel-prepared medical summaries and the report of another pulmonologist (Dr. Goldstein) who also had not examined the Plaintiffs. His opinion that Plaintiffs have respiratory conditions likely caused by paper mill emissions is not supported by the record documents. Accordingly, such testimony does not meet the requirements of Rule 702 and *Daubert* and must be excluded as unreliable.

### III. Conclusion

For the foregoing reasons, IP's Motion in Limine [Doc. No. 141] is GRANTED, and Dr. Irby is excluded from offering his report, opinions, or testimony at trial.

MONROE, LOUISIANA, this 30th day of September, 2014.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE