UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| DONALD SADLER, ET AL. | CIVIL ACTION NO. 09-1254 |
| VERSUS | JUDGE ROBERT G. JAMES |
| INTERNATIONAL PAPER CO. | MAG. JUDGE MARK L. HORNSBY |

RULING

Pending before the Court is Defendant International Paper Co.'s ("IP") "Motion to Exclude the Report, Opinions, and Testimony of Dr. Su-Jung (Candace) Tsai" [Doc. No. 136]. Plaintiffs filed a memorandum in opposition to the motion. [Doc. No. 172]. IP filed a reply. [Doc. No. 187].

For the following reasons, IP's motion is GRANTED IN PART and DENIED IN PART.

I.     **Procedural Background**

On July 28, 2009, Plaintiffs brought suit against IP, which formerly operated a paper mill in Bastrop, Louisiana, for claims based on IP's alleged release of hazardous substances into the air, asserting that the release caused or exacerbated their health conditions.

In support of their claims, Plaintiffs retained Dr. Su-Jung (Candace) Tsai ("Tsai") to provide an expert opinion.

On September 9, 2013, IP filed seven motions *in limine* [Doc. Nos. 135-141] seeking to exclude Plaintiffs' experts.

On December 2, 2013, Plaintiffs filed their memoranda in opposition to the pending motions in limine. *See* [Doc. Nos. 167-173]. On the same date, Plaintiffs filed a Motion to Hold Hearing on Defendant's Expert Witness Exclusion Motions and a Motion to Modify Case Management Order ("Motion to Hold Hearing and Modify CMO") [Doc. No. 176].

On December 27, 2013, IP filed an opposition to Plaintiff's Motion to Hold Hearing and Modify CMO [Doc. No. 183]. On December 30, 2013, IP filed reply memoranda in support of its motions in limine [Doc. Nos. 186-192], as well as a Motion to Strike Plaintiffs' Expert Affidavits and Supplemental Reports ("Motion to Strike") [Doc. No. 184].

On January 20, 2014, Plaintiffs filed a memorandum in opposition to IP's Motion to Strike [Doc. No. 194].

On January 30, 2014, the Court issued a Ruling [Doc. No. 195] and Order [Doc. No. 196], denying Plaintiffs' Motion to Hold Hearing and Modify CMO, but granting IP's Motion to Strike. The supplemental reports of Drs. Clark and Irby and the affidavits of all Plaintiffs' experts filed on December 2, 2013, were stricken from the record.

On March 24, 2014, the Court issued a Ruling and Judgment [Doc. Nos. 199 & 200] granting in part and denying in part IP's "Motion for Summary Judgment and Partial Summary Judgment on Certain Test Plaintiffs' Claims." The Court granted the motion as to all claims by Plaintiffs Jaunice Gorman, Roberta Anne Lambert, Emma Odom, and Robin Payton, and their claims were dismissed with prejudice. The Court granted the motion in part on Plaintiffs' personal injury claims for conditions other than asthma, chronic bronchitis, COPD, coughing, and sinusitis, limiting Plaintiffs to recovery for asthma, chronic bronchitis, COPD, coughing, sinusitis, and related symptoms. The Court also granted the motion for partial summary judgment in part on certain identified claims by certain Plaintiffs, dismissing the claim by Plaintiff Jamieon Akins that his sinus infections were caused by the mill emissions, but preserving claims by other Plaintiffs. Finally, the Court granted IP's motion in part on damages, dismissing Plaintiffs' claims for general damages, future medical expenses, and lost wages, but denying the motion as to past medical expenses.

The Court has now issued rulings on six of IP's seven motions *in limine*. [Doc. Nos. 201-210]. Many of the Court's rulings turned on the exclusion of the opinions, testimony, and reports of William A. Williams, who prepared the air dispersion modeling, and Dr. James J.J. Clark, an environmental expert.

The Court now turns to the remaining motion *in limine*. In contrast to most of the other experts, Dr. Tsai did not review Dr. Clark's or any other expert's report prior to issuing her own report. Likewise, none of Plaintiffs' other experts have indicated that they relied on Dr. Tsai's opinions or report. Thus, the Court considers Dr. Tsai's opinions and reports standing alone.

**II.     Law and Analysis**

Under Federal Rule of Evidence 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under Rule 702, a district court has considerable discretion in deciding whether to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-9 (1997) (reviewing district court's determination under abuse of discretion standard).

Reliability and relevance, under Rule 702, are the hallmarks of admissible testimony from an expert witness. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993); *In re MBS*

*Mgmt. Servs., Inc.*, 690 F.3d 352, 357 (5th Cir. 2012) ("[T]he trial judge serves as a gatekeeper to ensure the reliability and relevance of expert testimony."). Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[02], p. 702-18 (1988)). In determining reliability, "the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can properly be applied to the facts in issue." 509 U.S. at 589. "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho*, 526 U.S. at 152)).

"[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. . . ." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotations and citations omitted). "It is the role of the adversarial system, not the court, to highlight weak evidence[.]" *Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

Plaintiffs retained Tsai, who holds degrees in chemical engineering, management science,

4

and cleaner production and occupational hygiene, as an expert in industrial science/occupational hygiene. "She was asked to issue a report on occupational and nieghborhood exposures to toxic chemicals associated with IP's Bastrop mill." [Doc. No. 172, p. 5]. Tsai prepared a report on February 28, 2013, stating:

> In conclusion, it is the duty of the workaday owner to measure the concentrations of hazardous materials released into the work area and make sure they are within acceptable limits. [IP] at Bastrop didn't provide measurements of toxic substances on a regular basis to ensure the potential exposures were controlled and within acceptable limits. It is the duty of the workaday owner to warn of known dangers and to provide proper research to obtain information and protection to it in the form of engineering controls, respirators, or procedures or scheduling of workers which makes the workaday safe. [IP] didn't develop proper research to investigate and reduce air emission concentrations in the vicinity of [the] workaday where many local residents, employees and their families reside in order to provide the community's required right to know information.

[Doc. No. 172, Exh. 1, p. 6].

IP moves to exclude Tsai's report, opinions, and testimony on the following bases: (1) Tsai's workplace exposure and safety opinions are irrelevant, (2) Tsai is not qualified to offer opinions in this case, (3) Tsai's opinions are based on an unreliable methodology, and (4) Tsai's opinion on IP's actions and inaction are based on inaccurate and unreliable information.

Plaintiffs respond that Tsai does not intend to offer opinions as to whether IP complied with statutory and regulatory requirements on workplace safety. Rather, she will opine that, under the Emergency Planning and Community-Right-to-Know Act ("EPCRA"), 42 U.S.C. §11001, *et seq.*, IP "had a responsibility to the surrounding community to make available information about the chemicals and other substances emitted from the mill." [Doc. No. 172, p. 8]. Her discussion of workplace safety will be offered to provide background and support for her opinion on IP's duty to the community and its breach of that duty.

In its reply, IP argues that Plaintiffs have now limited Tsai's testimony as set forth in their

opposition memorandum. To this extent, IP argues that Plaintiffs have conceded that the Motion in Limine should be granted. IP argues further that Tsai should also be excluded from offering the remaining testimony and evidence about IP's responsibility under the EPCRA because her opinion would not be helpful to the trier of fact.

A.  **Relevance of Workplace Exposure and Safety Opinions, Tsai's Qualifications, and Tsai's Methodology**

Three of IP's arguments in support of its Motion in Limine appear to have been at least partially resolved by Plaintiffs' response: the relevance of Tsai's report or testimony about "employees," "workplace hazards," and the "workaday"; Tsai's lack of qualifications to render an opinion in this case; and Tsai's methodology to evaluate IP's release of air pollutants in the community.

First, IP moves to exclude Tsai's testimony, report and evidence on workplace exposure. In their opposition, Plaintiffs respond that Tsai does not intend to offer an opinion on workplace exposure and safety. Instead, her reference to workplace exposure and safety provided background for her ultimate opinion on community exposure under the EPCRA. Thus, since it appears undisputed that Tsai will not offer testimony about the exposure to IP's employees, workplace hazards, and workaday, to this extent, IP's motion is DENIED AS MOOT.

Second, IP does not dispute Tsai's academic qualifications, but argues that her qualifications do not "fit" the opinion offered because she has no experience with and does not understand the statutes and regulations governing pulp and paper mills. Plaintiffs respond that Tsai, a tenure-track faculty member at Purdue University, has been active in the industrial hygiene field for numerous years and has experience in the chemical industry. However, Plaintiffs also respond that Tsai will not offer an opinion or even comment whether IP complied with the statutory and regulatory

6

framework applicable to pulp and paper mills. Based on this understanding of the limited nature of Tsai's testimony, the Court finds that she is qualified by education to render and express an opinion in the case. Thus, to the extent that IP relies on Tsai's lack of qualifications to support its motion, the motion is DENIED.

Third, IP moves to exclude Tsai from testifying because of her methodology, arguing that she applied inapposite standards and made her own standards to evaluate IP's release of air pollutants in the community. However, Plaintiffs again respond that IP misunderstood the nature of Tsai's testimony. Plaintiffs argued several times that Tsai will not offer "any opinions as to IP's compliance with regulatory or statutory compliance." [Doc. No. 172, p. 12]. Thus, to this extent, IP's motion is DENIED AS MOOT.

### B. Tsai's Opinion on IP's Actions and Inaction under the EPCRA

After Plaintiffs' response to IP's Motion in Limine, one issue still remains clearly contested: whether Tsai can offer her testimony, opinions, and report that IP had a duty to the community under the EPCRA. IP argues that Tsai's opinion that the EPCRA exists and creates certain disclosure obligations is inadmissible because this is not a fact at issue for trial. Plaintiffs contend that IP released harmful chemicals in the air and that these chemicals caused Plaintiffs to suffer certain physical injuries (e.g., asthma). Yet, none of Plaintiffs' other experts rely on Tsai's opinion, and Tsai does not rely on the opinions of any of the other experts.

However, Plaintiffs contend that Tsai should be permitted to testify as to IP's duty to provide information to the Bastrop community about its releases of chemicals into the air based on her review of deposition testimony, IP documents, and the EPCRA. They reiterate that she will not testify about any statutory or regulatory violations, but that her testimony "will help the jury understand that IP has a responsibility to the workers and other individuals living in the surrounding

neighborhoods to provide information about the hazardous materials being emitted from the facility." [Doc. No. 172, pp. 8-9].

The Court disagrees with Plaintiffs. There is no doubt that Tsai is well educated and qualified to render opinions in her area of expertise. Nevertheless, her now-limited opinion simply will not be helpful to the trier of fact in determining whether IP's alleged release of hazardous substances into the air caused Plaintiffs to suffer negative medical consequences or exacerbated their existing medical issues. Under the remaining theories, Tsai's opinion that IP should have informed the community about the release of chemicals does not address a fact at issue. Thus, IP's Motion in Limine is GRANTED to this extent.

### III. Conclusion

For the foregoing reasons, IP's Motion in Limine [Doc. No. 136] is GRANTED IN PART and DENIED IN PART. To the extent that IP has moved to exclude Tsai's testimony, report, or other evidence on workplace exposure and based on her methodology, the motion is DENIED AS MOOT. To the extent that IP has moved to exclude Tsai's testimony, report, or other evidence based on her alleged lack of qualifications, the motion is DENIED. However, to the extent that IP moves to exclude Tsai's testimony, report, or other evidence on IP's obligation to the community under the EPCRA, the motion is GRANTED. At this juncture, given the representations of Plaintiffs in their opposition to the Motion in Limine, Tsai has no admissible testimony to offer at trial.

MONROE, LOUISIANA, this 23rd day of October, 2014.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE